**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donny Joel HARVEY,
Defendant–Appellant.**

No. 89–1476.

United States Court of Appeals,
Fifth Circuit.

March 26, 1990.

Walter M. Reaves, Jr., West, Tex. (Court-appointed), for defendant-appellant.

LeRoy M. Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., William C. Brown, Kathleen A. Felton, Attys., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before WISDOM, JOHNSON and DUHÉ, Circuit Judges.

JOHNSON, Circuit Judge:

Donny Joel Harvey appeals his conviction and sentence for possession of a handgun by a convicted felon in violation of 18 U.S.C. § 922(g)(1). For the reasons cited herein, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

On February 12, 1988, Waco, Texas, police officers secured an arrest warrant for James Jordan (Jordan) and a search warrant for Jordan's house. On the evening of the next day, while the officers were executing the warrant, and after methamphetamine and firearms had been found in Jordan's house, Officer Darrell Moore ob-

served Donny Joel Harvey (Harvey) drive up in the alley adjacent to Jordan's house. Officer Moore and a fellow officer approached Harvey and asked Harvey for his identification. Thereafter, Officer Moore, while frisking Harvey, discovered a loaded handgun concealed in Harvey's clothing. Harvey was arrested and later indicted by a federal grand jury sitting in the Western District of Texas on one count of possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 846. Harvey entered a plea of not guilty to the charges in the indictment.

Before trial, Harvey moved to suppress the handgun confiscated by Officer Moore. After conducting a hearing on the motion to suppress, the district court allowed the handgun into evidence. Thereafter, a jury returned a verdict of guilty against Harvey. The district court, departing upward from the guidelines, entered judgment on the verdict and sentenced Harvey to a sixty month term of imprisonment. Harvey thereafter filed this timely appeal.

## II. DISCUSSION

On appeal, Harvey advances arguments in support of four issues. First, Harvey argues that his rights to a speedy trial were violated by the district court. Second, Harvey contends that the district court erred in dismissing Harvey's motion to suppress the handgun confiscated from him. Third, Harvey complains that the district court erred by refusing a proffered jury instruction on the defense of duress or necessity. Fourth, Harvey contends that the district court improperly departed upward from the Federal Sentencing Guidelines in assessing his sentence. We reject Harvey's contentions addressing each issue in turn.

### I.

▮ Harvey first claims a violation of his right to a speedy trial under the Speedy Trial Act,[1] and under the sixth amendment. Before reviewing the merits of Harvey's contentions on this issue, it is helpful to

review the chronology of events giving rise to Harvey's claim. The search and seizure of the illegal handgun in Harvey's possession occurred on February 13, 1988. Harvey was arrested and placed in state custody on that date by state authorities. On September 14, 1988, Harvey was indicted by a federal grand jury. On September 27, 1988, a federal detainer was lodged with state authorities. Harvey initially appeared in federal district court on January 30, 1989. A little more than two months later on April 1, 1989, and after pretrial motions had been filed and considered by the district court, Harvey's actual trial commenced.

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court articulated a four factor analysis to be applied in cases where a criminal defendant has complained that his or her constitutional right to a speedy trial has been violated. The *Wingo* factors are as follows: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertions of his right; and 4) prejudice to the defendant. The first factor, the length of the delay, is a threshold consideration, and examination of the remaining three factors is unnecessary unless the period of delay is presumptively prejudicial to the defendant. *Id.* 92 S.Ct. at 2192.

In *United States v. Maizomi*, 526 F.2d 848 (5th Cir.1976), this Court held that a delay of ten and one-half months between arraignment and trial was not presumptively prejudicial. In *United States v. Avalos*, 541 F.2d 1100 (5th Cir.1976), however, this Court determined that a delay of fifteen months was prejudicial. In *Davis v. Puckett*, 857 F.2d 1035 (5th Cir.1988), a delay of thirteen months between indictment and trial was sufficient to warrant further inquiry. In the instant case, Harvey suggests that the seven month delay between the date of his indictment and the date his trial actually commenced was sufficient to give rise to further inquiry. Further, Harvey points out that if the period between Harvey's arrest and indictment is taken

---

1. 18 U.S.C. § 3161.

into account, the delay would clearly fall within the presumptively prejudicial range.

Notwithstanding Harvey's contentions, we are not prepared to conclude that the delay in this case was prejudicial. Our review of the record confirms the district court's observation that Harvey failed to demand a speedy trial when he had the opportunity to do so, *i.e.,* when he was presented the detainer form for signature in October 1988. Rather than demand a speedy trial at that time, Harvey waited some three months later until he appeared in federal court on January 31, 1989, to ask for a speedy trial. Harvey's actual trial commenced on April 10, 1989,—some seventy days from Harvey's first request for a speedy trial.

On these facts, we are unable to give credence to Harvey's argument that he has suffered prejudice as a result of the alleged delay in the scheduling of the proceedings against him. Further, Harvey has failed to show any reason for any alleged delay that is clearly attributable to the government. Thus, we determine that Harvey has not made a prima facie showing that his rights to a speedy trial were violated by the district court. Accordingly, we do not reach Harvey's arguments regarding the remaining three *Wingo* factors and conclude that the district court did not err in denying Harvey's motion to dismiss for a violation of his right to a speedy trial.

## II.

■ Harvey next argues that the district court erred in denying Harvey's motion to suppress the handgun seized from Harvey by Officer Moore during the search of the Jordan house. The warrant which gave rise to the search of Jordan's house also provided for the arrest of Jordan and any other persons making entry into the location or making their escape. In response to Harvey's challenge to the validity of the arrest warrant, the district court held that the warrant was invalid insofar as it authorized the arrest of persons entering or exiting the premises. The district court, in so holding, concluded that the warrant failed to sufficiently particularize the person to be arrested. The district court, reviewing the affidavit supporting the warrant, nevertheless concluded that the officers who arrested Harvey were acting in good faith reliance on the warrant. The court found that there was sufficient information in the affidavit to support a police officer's belief that the warrant was constitutionally sufficient.

On appeal, Harvey asserts that the affidavit and warrant were so lacking in probable cause that any reasonably well trained officer could not, in good faith, have relied on it. Harvey also argues that the warrant's failure to particularly describe the person to be arrested precluded reasonable reliance on it. Because we conclude, however, that the stop and search of Harvey was justified under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), we do not reach Harvey's good faith reliance argument.

In *Terry v. Ohio,* the Supreme Court recognized the necessity of granting a police officer the authority to search a person for weapons where the police officer has reason to believe that the person with whom he is dealing is possibly armed and dangerous. The Supreme Court emphasized that the officer in such a situation need not have probable cause to arrest the individual. Instead, the proper focus of inquiry is whether "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry,* 88 S.Ct. at 1883 (citations omitted). In determining whether an officer in such circumstances has acted reasonably in executing a stop and frisk search, this Court must give due weight to the specific inferences which the officer is entitled to draw from the facts of the situation in light of the officer's experience. *Id.* (citation omitted). In that regard, this Court is also bound to reject an officer's "inchoate and unparticularized suspicion or 'hunch'." *Id.*

On appeal, Harvey alleges that the arresting officer's sole justification for the stop and frisk was the officer's later assertion that it is common for persons dealing in narcotics to carry weapons. Harvey ar-

gues that this justification, standing alone, is insufficient to pass muster under *Terry* standards. Harvey's contention, however, fails to take into account many other factors which came into play in this particular instance. First, Officer Moore point blank asked Harvey if Harvey was armed. Harvey, instead of responding either affirmatively or negatively, simply remained silent. Second, by the time Harvey drove up and parked in the alley next to the Jordan house, officers had already discovered a quantity of methamphetamine, syringes and firearms on the premises. Third, the Jordan house was well known as a place where frequent drug deals were made and Officer Moore quite naturally could infer that Harvey had arrived to either buy or sell drugs. In our view, Officer Moore, based on his experience as a law enforcement officer in light of the above circumstances, could properly infer that there was a distinct possibility that Harvey was armed.

Harvey relies heavily on the Supreme Court case of *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), for his contention that the Court's holding in *Terry* does not apply to the circumstances of the instant case. In *Ybarra,* the Supreme Court considered the authority of an officer to frisk persons who are present at the time of the execution of a search warrant. In *Ybarra,* officers had secured a warrant to search a tavern for narcotics. In executing the warrant, officers subjected all the tavern's patrons to a frisk search. During the search, contraband was discovered on one of the patrons. The Court held that the search which yielded the contraband was improper in the absence of a reasonable belief that the person was presently armed and dangerous. The Court stated that

> [t]he *Terry* case created an exception to the requirement of probable cause, an exception whose "narrow scope" this

Court "has been careful to maintain." ... The "narrow scope" of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion *directed at the person to be frisked,* even though that person happens to be on premises where an authorized narcotics search is taking place.

*Id.* 100 S.Ct. at 343 (emphasis supplied) (citation omitted) (footnote omitted).

Unlike the instant case, *Ybarra* involved the wholesale search of all individuals present during the execution of a search warrant. In contrast, the instant case involved the search of one individual, Donny Joel Harvey, and, as *Ybarra* instructs, Officer Moore's suspicion was "directed at the person to be frisked [Harvey]." Moreover, the *Ybarra* case involved contraband, whereas, in the case at bar, the search yielded a loaded handgun—precisely the type of object for which the *Terry* exception was carved out by the Supreme Court. Thus, we are constrained to conclude that Harvey's reliance on *Ybarra* is misplaced.[2]

## III.

■ Harvey next contends that the district court erred by refusing a requested jury instruction on the defense of duress or necessity. This Court has recognized the availability of a justification defense to a charge of possession of a firearm by a felon. Before a defendant charged with such an offense is entitled to a jury instruction on the defense of justification, however, he must show:

(1) that defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury";

(2) that defendant had not "recklessly or negligently placed himself in a situation in which it was probable that he would

---

**2.** In holding that the search of Harvey in the instant case was justified under *Terry v. Ohio,* we emphasize that we do not countenance the search of any individual who happens to be no more than on the premises where a narcotics warrant is being executed. The mere presence of an individual on such premises with nothing

more does not suffice to justify a stop and frisk search under *Terry.* Accordingly, the result which we reach in the instant case is not contrary to this Court's holding in *United States v. Cole,* 628 F.2d 897 (5th Cir.), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1980).

be [forced to choose the criminal conduct]";

(3) that defendant had no "reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm'"; and

(4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm."

*United States v. Harper,* 802 F.2d 115, 117 (5th Cir.1986) (citations omitted) (brackets in the original).

In the district court, Harvey lodged the argument that he feared for his life at the hands of a rival faction of Seventh Day Adventists in his small hometown of Rodenville, Texas. According to Harvey, the Adventists in Rodenville had splintered into two groups. Harvey asserted that the two groups had engaged in "shoot-outs," and Harvey had allegedly been threatened by faction members who wanted him out of town. The district court, after hearing Harvey's testimony on this issue, concluded that

there is no evidence from which any reasonable person could determine that at the time of this incident the Defendant was under any unlawful and present imminent and impending threat of such a nature to induce a well-grounded apprehension of death or serious bodily injury. And second, that he had a reasonable legal alternative to violating the law, which was simply to walk into his friend's house and call the police if he believed he was under any threat.

Rec. Vol. 6 at 272–73. We have reviewed the record and are persuaded that the district court's findings regarding Harvey's claims of necessity and duress were not erroneous. Harvey simply failed to establish the defense as a matter of law. Accordingly, we are unable to conclude that the district court erred in refusing Harvey's proffered instruction on necessity.

### IV.

■ Harvey's final argument on appeal is that the district court erred in departing upward from the Federal Sentencing Guidelines. Harvey was convicted of violating 18 U.S.C. § 922(g)(1). The applicable sentencing guideline provided for a base offense level of 9 and a criminal history category of V. Although no mitigating adjustments were made by the district court, three points were added for each of Harvey's three prior felony convictions, two points were added because Harvey committed the instant offense while on parole, and one point was added because Harvey committed the instant offense less than two years after his release from imprisonment on a previous offense. The applicable sentencing range was from eighteen to twenty-four months, however, the district court departed from the guidelines and sentenced Harvey to sixty months' imprisonment—a sentence constituting the maximum term under the statute.

In departing from the guidelines, the district court stated that "the guidelines do not adequately take into account the criminal history of the Defendant in this case." The court further noted that "[Harvey] has been able to manipulate the criminal justice system basically all of his adult life to his advantage, and the time for his doing that has now come to an end."[3] On appeal, Harvey contends that the above explanation offered by the district court was insufficient to justify imposition of the maximum statutory term. Harvey urges that instead of departing upward from the guidelines, the district court should have considered whether the next highest criminal category—category VI—would have more adequately reflected Harvey's criminal history.[4] More precisely, Harvey as-

---

**3.** Harvey's criminal history included several offenses which were not contemplated by the sentencing guidelines because the offenses were more than ten years old. Those offenses included assault on a police officer, possession of marijuana, carrying a prohibited weapon and unlawful possession of a weapon.

**4.** Category VI, with a base offense level of 9, would have provided for a sentencing range of between 21 and 27 months.

signs error to the district court's failure to expressly articulate that the court had considered and rejected the possibility of utilizing criminal history category VI rather than category V.

In *United States v. Lopez*, 871 F.2d 513, 515 (5th Cir.1989), this Court was faced with a case with facts analogous to those of the instant appeal. In *Lopez*, the defendant was convicted of immigration law violations. The offense level was assessed at 9 and the criminal history category placed at I, resulting in a sentencing range of between four to ten months' imprisonment. The district court in *Lopez*, concluding that the defendant's criminal history category did not adequately reflect her prior criminal history, departed upward from the guidelines and imposed a sentence of two years' imprisonment.

On appeal, this Court held that the district court erred in essentially bypassing the guidelines and in not considering the possible sentences under the next higher criminal history category. The Court held that the "[g]uidelines require sentencing courts first to consider upward adjustments of the criminal history category, where a defendant's score appears inadequately to reflect his or her history, before a departure sentence may be justified on this basis. Where this is not done, resentencing is appropriate." *Id.* at 515. It is important to note, however, that the Court's holding was narrow, and was confined to those cases with "low criminal history scores."

In *United States v. Geiger*, 891 F.2d 512 (5th Cir.1989), this Court considered the district court's upward departure from the guidelines in a situation similar to the one at bar. In *Geiger*, the defendant was convicted of selling crack cocaine within 1,000 feet of an elementary school in violation of federal statute. The district court, in departing upward, determined that the guidelines did not properly consider the severity of the offense and also noted that Geiger was both on probation and on bail when the offense was committed.

On appeal, Geiger contended that the district court erred in departing upward

from the guidelines because the upward departure was based on "factors already taken into account by the Guidelines" and also because the "district court failed to enumerate its reasons for the upward departure." *Id.* at 513–14. This Court, concluding that Geiger's criminal history category did not accurately reflect the seriousness of Geiger's previous criminal conduct, affirmed. In so doing, the Court held that where a defendant's criminal history category was not an accurate reflection of past criminal conduct, upward departure was permissible. *Geiger*, 891 F.2d at 514 (citations omitted).

In the context of the instant appeal, we are inclined to prefer the result reached by the *Geiger* Court. As mentioned above, *Lopez* was confined to those cases where a defendant's criminal history category is low. In the case at bar, however, Harvey's criminal history score was not low, it was V. Moreover, this Court has repeatedly held that an upward departure from the guidelines because a criminal history category does not adequately reflect a defendant's past criminal history is not improper. *See, e.g., United States v. De Luna–Trujillo*, 868 F.2d 122, 124 (5th Cir.1989); *United States v. Fisher*, 868 F.2d 128, 129–30 (5th Cir.1989). Indeed, the guidelines themselves contemplate that a departure may be warranted precisely for this reason. *See* U.S.S.G. § 4A1.3. Accordingly, on the facts of this case, we are not prepared to conclude that the district court abused the discretion vested in it in departing from the guidelines. *See United States v. Roberson*, 872 F.2d 597, 601 (5th Cir.1989).

## III.  CONCLUSION

Harvey has failed to demonstrate that his constitutional and statutory rights to a speedy trial were violated by the district court. The district court did not err in refusing Harvey's proffered jury instruction on the defense of duress or necessity. Harvey's constitutional rights under the fourth amendment were not offended by the pat down search of his person which resulted in the confiscation of a loaded handgun. Finally, the district court did not

abuse its discretion in departing upward from the guidelines. The conviction and sentence are affirmed.

AFFIRMED.