. **UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jerry Lynn WEBB, Defendant–Appellant.**

**No. 91–8111.**

United States Court of Appeals, Fifth Circuit.

Dec. 23, 1991.

Rehearing Denied Jan. 30, 1992.

---

John M. Hurley, Waco, Tex. (Court-appointed), for defendant-appellant.

Mark R. Stelmach, Asst. U.S. Atty., Austin, Tex., LeRoy M. Jahn, Diane D. Kirstein, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before REYNALDO G. GARZA, GARWOOD, Circuit Judges, and ELDON

**B. MAHON, District Judge.[1]**

PER CURIAM:

This case involves an appeal following a conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. sec. 922(g)(1)[2] and a subsequent sentence under 18 U.S.C. sec. 924(e)(1)[3]. After being found guilty by a jury, appellant Jerry Lynn Webb (Webb) was sentenced to 240 months in a maximum security federal institution, five years supervised release, a $4,000.00 fine, and a $50.00 mandatory assessment. Webb asserts error occurred when the district court denied his motion to suppress, when it commented on an enhancement provision before the jury during voir dire, when the prosecutor made certain remarks during closing argument, and finally when the district court allegedly sentenced him improperly. Finding no merit to Webb's claims on appeal, we AFFIRM his conviction and sentence in all respects.

## I. The Facts.

At 1:48 a.m. on August 16, 1990, members of the Waco Police Department's Drug Enforcement Unit executed a search warrant at 508 Dyer Street in Waco, Texas. During the execution of the warrant, Officer Horace Knight, who was outside keeping watch over the search area, observed a 1976 brown Chevrolet Camaro automobile traveling slowly on an intersecting street near the Dyer residence. The driver of the Camaro was seen cutting off its lights, coasting to the opposite side of the street, and parking. Knight, observing the driver watching the progress of the search, warned his fellow officers. The collective knowledge of the officers revealed the car belonged to Webb, that Webb was a convicted felon with an outstanding warrant

for his arrest, and that Webb was known to carry firearms. Upon approaching the vehicle, it was determined Webb was in fact the driver. An officer instructed Webb to keep his hands on the steering wheel and another officer saw, in plain view, a pistol and shotgun in the car, easily within Webb's reach. Webb was arrested.

Following his release on bond several hours after his arrest, Webb was again arrested. At approximately noon on August 16, 1990, Officer Harris (Harris) received a phone call from Aljean Butler (Butler) informing Harris that Webb lived with Butler and her husband, that Butler had packed up Webb's belongings in a trunk because she had been tipped off that a search warrant would be executed at her house involving Webb, and that Webb's belongings included what Butler believed to be narcotics. When Harris approached Butler's house, he unexpectedly saw Webb there, loading the trunk of his belongings into the back of a pickup truck. Webb was detained. Subsequently, a drug-sniffing canine from the Waco Police Department alerted affirmatively to the trunk. Harris then obtained a search warrant for the residence, trunk and truck, the execution of which revealed, *inter alia*, a pistol under the passenger seat of the truck. Webb was again arrested.

## II. Analysis.

Webb complains that the district court, after hearing live testimony, erred in denying his motion to suppress. "In reviewing a motion to suppress based on live testimony at a suppression hearing, we must accept the district court's purely factual findings unless they are clearly erroneous." *United States v. Fernandez,* 887 F.2d 564,

---

1. District Judge of the Northern District of Texas, sitting by designation.

2. 18 U.S.C. sec. 922(g) provides in relevant part:

    (g) It shall be unlawful for any person—
        (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition....

3. 18 U.S.C. sec. 924(e)(1) provides in relevant part:

    (e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years....

567 (5th Cir.1989). "A finding is clearly erroneous only when the reviewing court is left with the 'definite and firm conviction that a mistake has been committed.'" *Id.* (*citing Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (*quoting United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)).

■ Webb argues the Dyer Street arrest was improper because the search warrant only authorized a search of the residence, not the surrounding area. The United States argues the arrest was appropriate under the standards for investigatory stops enunciated in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "The ultimate determination of the reasonableness of an investigatory stop [ ] is a question of law reviewed *de novo.*" *United States v. Harrison,* 918 F.2d 469, 472 (5th Cir.1990).

In *United States v. Harvey,* 897 F.2d 1300 (5th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 568, 112 L.Ed.2d 574 (1990), we upheld the denial of a motion to suppress, under facts similar to those found here, based upon the principles in *Terry.* In *Harvey,* the defendant drove up an alley behind a house while the police were executing a search warrant for methamphetamine and firearms. *Harvey,* 897 F.2d at 1301–02. The police approached the defendant, frisked him, and upon discovery of a handgun on his person, arrested him. *Id.* at 1302. On appeal, we noted the defendant remained silent when initially confronted by the police, the search of the residence pursuant to the warrant had already revealed evidence of a drug offense, and the house itself was known to be used for the sale of drugs. *Id.* at 1304.

In the present case, Webb did not initially respond to the police officers demands that he place his hands on the steering wheel on his car. The house being searched was known to be used for drug transactions. Webb's car was identified as that pulling up suspiciously to the side street. Webb was known to carry firearms. The police approached the vehicle

for safety reasons in the early hours of the morning. The police immediately recognized the driver as Webb, a known convicted felon with a known outstanding warrant for his arrest. Finally, the weapons were in plain view in the car, easily within Webb's reach. These facts are more than sufficient to justify the district court's denial of the motion to suppress under *Harvey* as it applied *Terry.*

■ Webb next argues the district court erred in denying his motion to suppress regarding his second arrest based upon the information provided the police by Butler which formed the basis for the affidavit of probable cause to search. Specifically, Webb contends Harris failed to inform the magistrate that Butler, the informant, was a known convicted felon with a bad reputation for truthfulness.

In *United States v. Leon,* the United States Supreme Court held that evidence obtained by law enforcement officials acting in good-faith reliance upon a search warrant is admissible even though the affidavit on which the warrant was based was insufficient to establish probable cause. *United States v. Leon,* 468 U.S. 897, 922–23, 104 S.Ct. 3405, 3419–20, 82 L.Ed.2d 677 (1985). The Court noted four circumstances in which the exception would not apply: 1) where a magistrate is misled by information known to be false by the affiant or the falsity of which would have been known but for the recklessness of the affiant; 2) where the magistrate abandons his duties; 3) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and 4) where the warrant is so facially deficient that a presumption of its validity is unreasonable. *Id.* at 923, 104 S.Ct. at 3420 (*citations omitted*).

"Like the determination of probable cause, 'the determination of good faith will ordinarily depend on an examination of the affidavit by the reviewing court.'" *United States v. Craig,* 861 F.2d 818, 821 (5th Cir.1988) (*quoting United States v. Gant,* 759 F.2d 484, 487–88 (5th Cir.) *cert. denied,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985)). To make a determination that the

officers acted in good faith and whether there was sufficient indicia of probable cause, we must use our common sense and construe the affidavit in a realistic manner in the context of the "laminated total" of the available facts. *Craig*, 861 F.2d at 821 (*citations omitted*). With these principles in mind, we conclude the officers acted in good faith reliance upon the warrant for the search and arrest of Webb. The affidavit specifically set forth the items to be searched and related the fact that the informant was the lessor and resident of the house where Webb was living (the house to be searched). Moreover, the officers independently confirmed central facts provided by Butler when they approached the house with Butler, after she signed a consent to search the residence, and saw Webb carrying the described evidence to be searched and loading it into the described truck to be searched. Moreover, a drug-sniffing canine confirmed the existence of contraband in the items to be searched. Under these facts "fleshing out" the statements of the informant Butler, we find a sufficient basis to conclude the officers acted in good faith on the warrant and therefore reject Webb's arguments to the contrary. *See United States v. Pigrum*, 922 F.2d 249, 253 (5th Cir.) *cert. denied sub nom. Allen v. United States*, — U.S. ——, 111 S.Ct. 2064, 114 L.Ed.2d 468 (1991) (officers may rely on warrant supported by more than "bare bones affidavit").

■ Having decided the district court properly denied Webb's motion to suppress, we now turn to Webb's contention that one isolated remark of the district court to the jury requires reversal of his conviction. During *voir dire*, the district judge mistakenly told the jury that Webb had been charged with unlawfully possessing a weapon in violation of 18 U.S.C. sec. 922(g)(1) *and sec. 929(e)(1)*. Section 924(e)(1) is, of course, a sentencing enhancement provision that does not create a separate offense. *United States v. Affleck*, 861 F.2d 97, 98–99 (5th Cir.1988), *cert. denied*, 489 U.S. 1058, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989). We hardly think this isolated reference to a provision of the United States Code harmed Webb by influencing the jury, particularly in light of the fact that Webb stipulated to three prior felony convictions and the fact that he was convicted of the sec. 922(g) violations by the jury. *See United States v. Turner*, 565 F.2d 539, 541 (8th Cir.1977) (*per curiam*) (improper reference to felony conviction not prejudicial in light of substantial evidence against appellant); *United States v. Glaziou*, 402 F.2d 8, 16 (2d Cir.1968), *cert. denied*, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969) ("highly unlikely" harm occurred due to paraphrasing of indictment at *voir dire*). We thus reject Webb's complaints regarding the comment of the district court at *voir dire* and turn now to his argument that we must reverse his conviction due to the allegedly improper statements of the prosecution in closing arguments.

■ It is well established that an attorney may recite to the jury those inferences and conclusions he wishes them to draw from the evidence so long as they are based on the evidence. *United States v. Davis*, 831 F.2d 63, 66 (5th Cir.1987) (*citing United States v. Garza*, 608 F.2d 659, 662 (5th Cir.1979)). During closing arguments, the prosecutor suggested essentially that Webb was arrested "sneaking up" to the residence on Dyer Street, was possibly sneaking up on the police officers conducting the search, and was possibly contemplating the use of the weapons found within his reach.[4] These statements were not

---

4. The prosecutor stated:

"Why, if [Webb] really intended to simply go to Dyer and take the guns back—it's still against the law to do that—but why, if that's really what he did, did he do it the way he did? In other words, who was he sneaking up on? Do you sneak up on your own friends? Or do you think that he had time during that hour to think about some things and to see some things? And do you think that it's reasonable to think that instead of this poor Mr. Webb, plain vanilla—"Oh, I just had the guns kind of an accident"—do you think this: He had them so positioned and he had them so loaded, because—and he did this, because he had been by, he knew the police were there, and he didn't want them to see him—why would he turn off his lights and coast if he

objected to by Webb. We find these statements to be inferences supported by the evidence and thus reject Webb's contentions to the contrary. Even were we to find the statements improper, we would reach the same result for Webb has not demonstrated the requisite prejudice to overcome the heavy burden placed upon him by the plain error standard. *See United States v. Robles–Pantoja*, 887 F.2d 1250, 1256 (5th Cir.1989) (error must be so basic, substantial, prejudicial and obvious as to render trial lacking in fundamental aspects of justice).

In Webb's final argument, he contends the district court erred when it sentenced him. At the sentencing hearing, the district court reasoned the criminal history category of VI did not adequately reflect the seriousness of Webb's past criminal conduct. The court stated:

Regarding an upward departure urged by the Government, the court would determine that is appropriate in this, based on the, first of all, numerous convictions were innocent, before he could even see—the testimony of Sgt. Knight there was, it was up here somewhere (indicating)—before he could see any of that? Why would he do that? Who was he sneaking up on with those guns so positioned, with what kind of shot? The kind of shot that spreads out, that can take out eight people at one, that what? The next round can penetrate even—what was the testimony—some had bulletproof vests on—that could penetrate. Why? If it's so innocent, Mr. Webb, who were you sneaking up on, and why did you stare so intently at those officers? What were you dreaming about, Mr. Webb?"

5. The pre-sentence report indicated Webb had eight (8) convictions for burglary and one for theft at the age of seventeen in 1960, one conviction for burglary in 1965 at the age of twenty-two and a conviction for murder without malice in 1971 at the age of twenty-eight. These convictions appear to coincide generally with Webb's release from correctional facilities. Together with those convictions permissibly considered by the court in calculating the criminal history category of VI, Webb had a total of sixteen (16) felony convictions, eleven of which occurred more than fifteen years prior to the instant conviction. Additionally, 18 U.S.C. sec. 924(e)(2)(B)(ii) provides that burglary is a violent crime.

In *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court established a generic definition of burgla-

that Mr. Webb has that are not counted under the Guideline scheme. [T]hose convictions that are more than 15 years of age were merely the initial stages of a burgeoning criminal career that has continued unabated up until this time.

The pre-sentence report provided to the court indicated numerous convictions which were older than fifteen years and thus not considered by the guidelines in the calculation of the appropriate criminal history category.[5] *See* U.S.S.G. 4A1.2(e)(1). The court relied upon these convictions to conclude Webb's criminal history category did not adequately reflect the seriousness of his past criminal conduct or the likelihood that he would commit other crimes in the future. *See* U.S.S.G. 4A1.1.

▉▉▉ The standard of review employed to analyze a district court's departure from the Sentencing Guidelines requires us to determine two issues: 1) was the departure based on acceptable reasons, and 2) was it a reasonable departure. *United States v. Wade*, 931 F.2d 300, 306 (5th Cir.), *cert.*

ry for purposes of analysis of state convictions for burglary under the enhancement provisions of sec. 924(e). The Court stated lower courts would be required to refer to the language of state statutes to determine whether or not convictions for burglary meet the requirements of the generic definition. *Taylor*, 110 S.Ct. at 2153. That generic definition, the Court explained, requires "an unlawful or unprivileged entry into or remaining in a building or other structure, with intent to commit a crime." *Id.* Where state statutes differ from the generic definition, for example, by permitting conviction for burglary of a vehicle instead of a building, a court must examine the particular facts of a conviction before using it to enhance a sentence under sec. 924(e).

*Taylor* disapproved those cases which held an inquiry into the statutory language or particular facts of a burglary conviction was not required. We observe, however, that *certiorari* was *denied* in our decision in *United States v. Quintero*, 872 F.2d 107 (5th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 2586, 110 L.Ed.2d 267 (1990), in which without considering the statutory language of Texas' burglary statute we concluded enhancement was proper, *after* the Supreme Court decided *Taylor*. We need not conclude here this denial was an implicit approval of the current Texas statute under the requirements of *Taylor*. We note, however, that the Texas burglary statute as it existed at the time of most of Webb's convictions comports with the requirements of *Taylor*. *See* VERNON'S ANNOTATED PENAL CODE art. 1389 (1953) (repealed 1973).

*denied,* —— U.S. ——, 112 S.Ct. 247, 116 L.Ed.2d 202 (1991). We hold the basis upon which the court made its departure was reasonable given the past criminal history of Webb and the inadequacy of the guideline category in reflecting that history. Furthermore, we hold the amount of the departure, five years, was reasonable, particularly in light of the facts of Webb's past and that his base sentence was the *minimum* statutory penalty of fifteen years. *See* 18 U.S.C. sec. 924(e)(1) (mandating minimum sentence of fifteen years for violation of 18 U.S.C. sec. 922(g)); *see also United States v. Briggman,* 931 F.2d 705, 710 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991) (upward departure of fifteen years from statutory minimum sentence of fifteen years reasonable based on defendants past criminal history). Finally, because we find the district court properly assessed its upward departure on the basis of Webb's past criminal conduct, we need not reach any other justifications it may have had in so departing.[6] *See United States v. Mejia-Orosco,* 867 F.2d 216, 220 (5th Cir.), *clarified on reh'g,* 868 F.2d 807 (5th Cir.1989) (court need not reach remaining justifications for increase if first justification sufficient); *see also United States v. Williams,* 910 F.2d 1574, 1578–80 (7th Cir.1990), *petition for cert. granted,* —— U.S. ——, 111 S.Ct. 1305, 113 L.Ed.2d 240 (March 18, 1991) (if one basis for departure proper and other improper, improper basis harmless error if proper basis sufficient standing alone).

### III.  Conclusion.

Because we find no basis upon which to reverse the conviction or sentence of Webb, we

AFFIRM.

---

**6.** Webb argues the district court erred in departing upwards from the Guidelines by: 1) departing upwards in an unreasonable amount; 2) speculating as to Webb's past criminal history; 3) considering Webb's "alleged" escape attempt from jail; 4) considering a new Guideline pun-

ishment not in effect when Webb committed the offense he was convicted of; and 5) referring to Webb's age, poverty, and job skills. Even were we to reach these issues on this appeal, our initial review reveals they are without merit.