59 F.3d 176
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff - Appellee,
v.
Victor CARRAFA, Defendant - Appellant.
 No. 94-10322.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 14, 1995.
Decided June 26, 1995.
 
 Before: GIBSON,* HUG, and GOODWIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Victor Carrafa appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g)(1) (1988). We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 (1988), and we AFFIRM.
 
 I. BACKGROUND
 
 3
 At around 3:00 PM, December 16, 1992, the Sacramento Sheriff's Department executed a search warrant for the person, residence, and vehicle of Michelle Burgess. Burgess' residence is located in a mixed business/residential area. The plain-clothes officers seized considerable evidence of methamphetamine manufacturing, including chemicals and equipment used in the manufacture of illegal methamphetamine as well as finished ephedrine tablets.
 
 
 4
 While searching the side yard of the residence, the officers saw Carrafa drive up and park near the front of the house. Based on where he had parked his car, the officers concluded that Carrafa intended to enter Burgess' residence. Carrafa sat in his car watching the officers for fifteen to twenty seconds until the officers approached his car. Detective Bell identified himself as a police officer and asked Carrafa about his intentions. Carrafa replied that he "was there to use Michelle's telephone." Bell then asked Carrafa to exit the car. After Carrafa complied with Bell's request, Bell asked him if he was carrying any weapons. Carrafa, who was wearing a green fatigue jacket with several large pockets, replied that he was not. Bell then informed Carrafa that he was going to conduct a pat-down search for weapons and ordered Carrafa to raise his hands above his head. Carrafa raised his hands, then lowered them. Bell ordered him to raise his hands again. Carrafa began to comply, then lowered his hands again. After ordering Carrafa to raise his hands a third time, Carrafa complied, and Bell patted him down. Bell located a .380 semi-automatic pistol contained in a black cloth zippered bag bearing a Gloria Vanderbilt logo in Carrafa's jacket pocket. After Carrafa was arrested for carrying a concealed weapon, the officers searched his car. That search produced a camouflaged stun gun and a lock-pick set, among other tools.
 
 
 5
 Carrafa was charged with one count of being a felon in possession of a firearm. Carrafa filed a pretrial motion to suppress the evidence seized. Following an evidentiary hearing on this issue, the district court denied the motion, concluding that the evidence was seized pursuant to a valid Terry[1] stop and frisk. At trial, Carrafa testified in his own defense, denying that he knowingly possessed the firearm. He claimed instead that he thought the case contained his staplegun, rather than a firearm. Over defense counsel's objection, the district court allowed the prosecution to introduce evidence of Carrafa's ownership of the lock-pick set and stun gun as probative evidence of Carrafa's knowing possession of the firearm. The jury found Carrafa guilty as charged, and he was subsequently sentenced to 293 months imprisonment. Carrafa appeals.
 
 II. DISCUSSION
 A. Search and Seizure
 
 6
 Carrafa contends that the district court erred by denying his motion to suppress the evidence seized. He claims that the stop and subsequent pat-down search constituted an arrest and search without probable cause or, in the alternative, a stop and frisk without reasonable suspicion, in violation of the Fourth Amendment's prohibition of unreasonable searches and seizures.
 
 
 7
 We conclude, however, that Carrafa was not "seized" within the meaning of the Fourth Amendment, if at all, until he was ordered out of the car. "Whether an encounter between an individual and law enforcement authorities constitutes an investigatory stop is a mixed question of law and fact subject to de novo review." United States v. Kim, 25 F.3d 1426, 1430 (9th Cir.), cert. denied, 115 S. Ct. 607 (1994). Not all personal interaction between police officers and citizens involve seizures. Terry, 392 U.S. at 19 n.16. A person is not "seized" for Fourth Amendment purposes until "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). Consequently, there is no seizure when a police officer approaches an individual and merely questions him or requests to examine his identification, so long as that officer does not convey the impression that compliance is required. Florida v. Bostick, 501 U.S. 429, 434 (1991). As we observed in Kim, 25 F.3d at 1430, "where ... officers come upon an already parked car ... the driver is not clearly stopped in any sense ab initio, except of his own volition."
 
 
 8
 Carrafa argues that he was unconstitutionally seized when the officers ordered him out of the car. We need not address this issue again, however, because even assuming that the officers' language was sufficiently peremptory to transform the encounter into a seizure, we nevertheless conclude that the officers had a reasonable suspicion for conducting an investigative stop. Under Terry, police officers may, without a warrant, briefly stop and ask questions of persons whom they reasonably suspect of criminal activity. 392 U.S. at 20-23. For an investigative stop to be valid, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. While the requisite degree of suspicion is less than probable cause, it must be more than an "unparticularized suspicion or 'hunch."' Id. at 27.
 
 
 9
 Whether there was adequate suspicion to justify an investigatory stop is a mixed question of fact and law requiring de novo review. United States v. Thomas, 863 F.2d 622, 625 (9th Cir. 1988). In this case, the officers clearly had reasonable suspicion for conducting an investigative stop. The officers had just uncovered substantial evidence of methamphetamine manufacturing at the Burgess residence. Based on their law enforcement experience, those officers knew that persons involved in the manufacture of methamphetamine generally have multiple co-conspirators. The fact that Carrafa pulled up and parked directly in front of the residence being searched reasonably indicated that Carrafa intended to enter that residence and potentially had some connection to the occupants or business being conducted therein. Carrafa also identified the owner of the residence by name and indicated that he had come in order to use her telephone. Both of these statements further indicated that his connection to the residence being searched and its owner was more than casual or coincidental. Based on Carrafa's apparent connection to the address where substantial evidence of criminal activity had been found, the officers were entitled to briefly detain Carrafa in order to execute an investigative stop. See United States v. Moreno, 891 F.2d 247, 249 (9th Cir. 1989).
 
 
 10
 We further conclude that the ensuing pat-down search was also justified under Terry v. Ohio. Under Terry v. Ohio, a law enforcement officer may, for his own protection, conduct a pat-down search in order to find weapons that he reasonably believes or suspects are then in possession of the person whom he has stopped. Terry, 392 U.S. at 24. Carrafa argues that the officers lacked reasonable suspicion. He relies on Ybarra v. Illinois, 444 U.S. 85, 93 (1979), in which the Supreme Court held that officers executing a warrant to search a tavern lacked reasonable suspicion to frisk a patron who happened to be on the premises but had done nothing suspicious. Id. at 91, 96. Unlike Ybarra, however, Carrafa was not merely standing innocently next to a pinball machine in a public tavern. Id. at 88. Carrafa's statement that he was headed for the Burgess residence where officers had discovered substantial evidence of illegal methamphetamine manufacturing, the fact that methamphetamine traffickers are typically armed, and the fact that Carrafa's camouflaged jacket was capable of concealing a weapon in one of its many pockets all support the officers' reasonable suspicion that Carrafa was armed. United States v. Harvey, 897 F.2d 1300, 1303-04 (5th Cir.), cert. denied, 498 U.S. 1003 (1990), overruled in part on a Sentencing Guidelines issue by United States v. Lambert, 984 F.2d 658 (5th Cir. 1993) (en banc).
 
 
 11
 We also reject Carrafa's contention that the Terry stop was transformed into a full-blown arrest when one of the officers pointed his weapon at Carrafa. We have previously held that in certain circumstances, an officer may reasonably draw his weapon to safely complete a Terry stop without converting the nature of the encounter into an arrest requiring probable cause. United States v. Taylor, 716 F.2d 701, 708 (9th Cir. 1983). In this case, the officers knew Carrafa had come to visit the home in which they had just discovered evidence of large-scale drug manufacturing. The officers knew Burgess was probably operating with a male coconspirator. Carrafa repeatedly failed to comply with the officers' requests to raise his hands so they could complete the pat-down pursuant to the valid investigatory stop. Carrafa was wearing a bulky fatigue jacket conducive to concealing weapons. On these facts, we conclude that the officer acted reasonably in drawing his weapon as a safety precaution while completing the brief detention and frisk pursuant to Terry. This action did not constitute an arrest of Carrafa, and, consequently, probable cause was not required at that point. See id., at 708-09.
 
 B. Fed. R. Evid. 403 and 404(B)
 
 12
 Carrafa argues that evidence of the stun gun and lock-pick set found in his car should have been excluded under Fed. R. Evid. 404(b)[2] as extrinsic evidence of "other crimes" offered solely for the purpose of proving his malevolent character. Whether evidence constitutes "other crimes" evidence admissible only as provided under Fed. R. Evid. 404(b) is a question of law, which we review de novo. United States v. Sitton, 968 F.2d 947, 958 (9th Cir.), cert. denied, 113 S. Ct. 478 (1992). "Evidence should not be considered 'other crimes' evidence when the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined." United States v. Williams, 989 F.2d 1061, 1070 (9th Cir. 1993) (quotations omitted). We believe these items were not extrinsic evidence subject to Rule 404(b) analysis, but properly admitted as evidence of the crime charged in the indictment because they were inextricably intertwined with Carrafa's knowing possession of the firearm. United States v. Gutierrez, 995 F.2d 169, 172-173 (9th Cir. 1993) (bulletproof vest worn by driver of car in which defendant was a passenger and ski mask located in front passenger area were properly admitted as intrinsic evidence in order to prove defendant's knowing possession of firearm found in car).
 
 
 13
 Carrafa alternatively argues that this evidence should have been excluded pursuant to Fed. R. Evid. 403[3] as unduly prejudicial. The district court found that the prejudicial effect of this evidence did not outweigh its probative value regarding Carrafa's knowing possession of the firearm. We review the district court's decision to admit evidence for abuse of discretion, Sitton, 968 F.2d at 958, and find none.
 
 III. CONCLUSION
 
 14
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The HONORABLE FLOYD R. GIBSON, Senior Judge for the Eighth Circuit Court of Appeals, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Terry v. Ohio, 392 U.S. 1 (1968)
 
 
 [2]
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."
 
 
 [3]
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."