[Cite as *Hurd v. Blossom 24 Hour We Care Ctr., Inc.*, 2012-Ohio-3465.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97936**

## APRIL HURD

PLAINTIFF-APPELLANT

vs.

## BLOSSOM 24 HOUR WE CARE CTR., INC., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-746786

**BEFORE:** Blackmon, A.J., E. Gallagher, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** August 2, 2012

**ATTORNEY FOR APPELLANT**

Eric Norton
The Norton Law Firm Co., L.P.A.
Cedar-Grandview Building, Suite 6
12434 Cedar Road
Cleveland Heights, Ohio 44106


**ATTORNEYS FOR APPELLEES**

Stuart Torch
Barbara Kaye Besser
Bruce B. Elfvin
Elfvin & Besser
4070 Mayfield Road
Cleveland, Ohio 44121

PATRICIA ANN BLACKMON, A.J.:

{¶1} Appellant April Hurd appeals the trial court's granting of summary judgment in favor of appellee Blossom 24 Hour We Care Center, Inc., Xtra Helping Hands Health Care, and the owner of both companies, Dreamer Sanders (collectively referred to as "Blossom") and assigns the following errors for our review:

> **I. The trial court erred in dismissing Hurd's claim for wrongful discharge in violation of public policy because there is a clear public policy in Ohio against firing an employee for seeking unpaid compensation and R.C. § 4113.15 (Ohio's Prompt Pay Act) does not protect employees against being discharged for reporting prompt pay violations.**

> **II. The trial court erred in dismissing Hurd's FLSA retaliation claim because there was more than sufficient evidence that Blossom management fired Hurd for retaliatory reasons, namely her verbal and written complaints about unpaid overtime.**

{¶2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

## Facts

{¶3} In January 2011, Hurd filed a complaint against Blossom contending Blossom terminated her after she requested unpaid vacation and holiday pay, and overtime compensation. On September 6, 2011, Hurd filed an amended complaint adding Sanders and Xtra Helping Hands as parties. The amended complaint alleged that her termination was in violation of public policy, was retaliatory in violation of the Fair

Labor Standards Act ("FLSA"), and that Blossom was negligent in failing to file documents with the Ohio Department of Health necessary to keep her nursing license current with the Nursing Board.[1] Blossom filed a motion for summary judgment, which was opposed by Hurd.

{¶4} The evidence showed that Hurd worked for Blossom from 2006 until early August 2010 as a State Tested Nurse's Aid ("STNA"). Blossom was an Ohio not-for-profit entity that employed STNAs to provide home healthcare services to the elderly and was owned and operated by Dreamer Sanders. Blossom was a PASSPORT administrative agency ("PAA"), which is an entity that receives state funding to provide in-home care to certain elderly individuals who are not Medicaid eligible. PAAs are prohibited by state rule from hiring employees with certain criminal offenses for the position of a STNA. Blossom also received funding from the Options for Elders program ("Options") through the Cuyahoga County Department of Senior and Adult Services.

{¶5} A background check was conducted on Hurd when she commenced working for Blossom in February 2006. The background check revealed that she had been charged with felonious assault in 1983, but was straight released without being tried. In 2008, Blossom again performed background checks on its STNA employees as part of its compliance with PASSPORT's requirements. The 2008 background check revealed that Hurd, in October 2006, had pled guilty to attempted drug trafficking and attempted

---

[1]Sanders helped Hurd to get her license renewed upon learning during the lawsuit that she needed Sander's help to do so.

drug possession. These offenses constituted disqualifying offenses to care for PASSPORT clients; therefore, as of June 26, 2008 Hurd was no longer permitted to care for PASSPORT clients. Hurd's mother was a Blossom PASSPORT client. Sanders was, however, able to negotiate with PASSPORT to secure an exception to allow Hurd to continue to care for her mother.

{¶6} From June 2008 to April 2010, Hurd could only provide care for Blossom's Options' clients and her mother. In April 2010, Blossom lost its contract with Options. Thus, because Hurd was prohibited from caring for PASSPORT clients, the only client she could care for was her mother.

{¶7} In June 2010, Sanders notified Blossom employees that she was closing Blossom and starting a new company, called Xtra Helping Hands, which is a for-profit home health care business. The employees were instructed that if they wished to work for Xtra Helping Hands they had to reapply, and those hired had to pass background checks. Hurd never applied to work for Xtra Helping Hands; however, her last two paychecks were written by Xtra Helping Hands. Sanders stated that she told Hurd multiple times to come to her office to fill out the forms for her background check and to be fingerprinted. She also sent her a letter on July 15, 2010, informing her of the requirement to have a background check. Hurd failed to appear as directed until August 13, 2010. According to Sanders, at this time, she had already decided to terminate Hurd for failure to comply with the procedure for background checks. Sanders formally terminated Hurd via a letter dated August 13, 2010.

**{¶8}** Hurd stated that she was never advised to appear for a background check until she appeared at Sanders's office on August 13, 2010. Hurd admitted to receiving phone calls from Blossom's office manager, Loretta Montgomery, telling her to stop working for her mother. When claimed when she asked why, Montgomery told her a more reliable person was needed. Blossom contends the phone calls occurred in July; however, Hurd claims she received the calls in the early part of August.

**{¶9}** Hurd also testified in her deposition that before being terminated she had confronted Sanders about not receiving overtime pay or payment for holiday and vacation time. According to Hurd, her entire time working for Blossom, she never took time off during the holidays and never took vacation time. Hurd admitted that after she was employed for one year, she attempted to take vacation time. She was told she could take the time, but that it would be unpaid.

**{¶10}** Hurd stated that after verbally complaining to Sanders about nonpayment for the hours, Sanders told Hurd that she did not realize there was a problem and would get back to her. After Hurd had not heard from Sanders for several days, Hurd sent her a grievance letter on August 3, 2010, demanding to be compensated for the overtime hours and for the vacation days and holidays that she worked. Sanders and Blossom's office employees, Loretta Montgomery and Paula King, acknowledged to having each received the letter but could not recall when. The letter itself is undated.

**{¶11}** The trial court concluded that Blossom was entitled to summary judgment as a matter of law on all of Hurd's claims and held in pertinent part:

**As to Count I of the second amended complaint, Ms. Hurd alleged that she was terminated from her employment because she sought unpaid wages. The evidence demonstrates that Ms. Hurd cannot predicate her public policy claim pursuant to R.C. 4111.13 as adequate statutory remedies exist. See, *Demell v. The Cleveland Clinic Found.*, 2007-Ohio-2924 (8th Dist.). As to Count II of the second amended complaint, Ms. Hurd alleged that she was terminated for seeking unpaid overtime wages in violation of the Fair Labor Standards Act. The evidence demonstrates that Ms. Hurd cannot establish a prima facie case for retaliation under the Fair Standards Labor Act [sic]. As to Count III, Ms. Hurd alleged negligence against the defendants for failing to have her STNA license renewed. The evidence demonstrates that Ms. Hurd cannot establish that the defendants owed any duty to her to have her licensed renewed.**

## Public Policy Claim

{¶12}  In her first assigned error, Hurd argues the trial court erred by granting summary judgment on her claim that her termination violated the public policy set forth in the Prompt Payment Act, R.C. 4113.15.

{¶13}  We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays*, 140 Ohio App.3d 1, 746 N.E.2d 618 (8th Dist.2000), citing *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987); *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving

party, reasonable minds can reach only one conclusion that is adverse to the non-moving party.

{¶14}    In Ohio, absent an employment contract, employment is at will and may be terminated at anytime for any lawful reason or for no reason at all.  *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 102, 483 N.E.2d 150 (1985), at fn. 1, citing *Henkel v. Edn. Research Council*, 45 Ohio St.2d 249, 255, 344 N.E.2d 118 (1976).    It is undisputed that Hurd's employment was at will.

{¶15}    An at-will employee may not be discharged or disciplined for reasons violative of a statute or public policy. *Greeley v. Miami Valley Maintenance Contrs.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), paragraph two of the syllabus.  In *Painter v. Graley,* 70 Ohio St.3d 377, 1994-Ohio-334, 639 N.E.2d 51, the Court held that:

> **'[c]lear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law.**  *Id.* at paragraph three of the syllabus.

{¶16}    In the instant case, the trial court concluded that Blossom was entitled to judgment as a matter of law on Hurd's public policy claim because she had an adequate statutory remedy under the Fair Labor Standards Act ("FLSA").   While this is true as to Hurd's claims for overtime, the FLSA does not cover vacation or holiday pay.   Hurd

claims that Blossom's firing her for requesting holiday and vacation pay violated the public policy pursuant to the Prompt Payment Act, R.C. 4113.15. We disagree.

{¶17} To establish her wrongful termination claim, Hurd must show that: 1) a clear public policy existed and was manifested in a state or federal constitution, statute, or administrative regulation, or in the common law (the clarity element); 2) her dismissal jeopardized the public policy (the jeopardy element); 3) her dismissal was motivated by conduct related to the public policy (the causation element); and 4) Blossom lacked an overriding legitimate business justification for the dismissal. *Collins v. Rizkana*, 73 Ohio St.3d 65, 1995-Ohio-135, 652 N.E.2d 653; *Graley*, 70 Ohio St.3d at 384. The clarity and the jeopardy elements are questions of law and policy to be determined by the court. *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 151, 1997-Ohio-219, 677 N.E.2d 308, citing *Collins* at 70. The causation and overriding-justification elements are questions of fact to be determined by the trier of fact. *Id.*

{¶18} We must determine the public policy that R.C. 4113.15(C) seeks to advance. In determining legislative intent, we look to the statutory language and the purpose to be accomplished. *See Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417, 1999-Ohio-361, 704 N.E.2d 1217, citing *State ex rel. Richard v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund*, 69 Ohio St.3d 409, 411, 1994-Ohio-126, 632 N.E.2d 1292. R.C. 4113.15 is entitled, "Semimonthly payment of wages" and section (C) provides in pertinent part as follows:

**In the absence of a contest, court order or dispute, an employer *who is party to an agreement* to pay or provide fringe benefits to an employee \* \* \* becomes a trustee of any funds required by such agreement to be paid to any person \* \* \* from the time that the duty to make such payment arises.** (Emphasis added.)

{¶19} The statute establishes that an employer acts as a trustee of the funds that it has agreed to pay. For example, the employer can agree to be the trustee for such things as vacation and holiday pay, pension benefits, health insurance, and repayment of loans and is obligated to pay the appropriate person or third party when payment is due. The statute does not mandate that employees must be paid for holiday or vacation time, instead such benefits are determined by the "agreement" between the employer and employee. *See Winters-Jones v. Fifth Third Bank*, 8th Dist. No. 75582, 1999 Ohio App. LEXIS 2410 (May 27, 1999) (where vacation policy provides that the employee must work an entire year, up to and including the anniversary date, in order to earn the vacation pay for that year, employee not entitled to payment); *Ervin v. Oak Ridge Treatment Ctr. Acquisition Corp.*, 4th Dist. No. 05CA27, 2006-Ohio-3851, at ¶ 13 ("Ohio courts have enforced company policies that restrict or preclude payment for personal or vacation time upon termination of employment, where \* \* \* the policies are clear and published in an employee handbook"); *Majecic v. Universal Dev. Mgt. Corp.*, 11th Dist. No. 2010-T-0119, 2011-Ohio-3752 ("[I]f the employer has a clear policy set forth in an

employee manual or handbook providing that paid vacation time is forfeited on resignation or discharge, Ohio courts are required by law to enforce such policy.")

{¶20} Thus, whether Blossom was obligated to pay Hurd is dependent on whether Blossom had an agreement to pay employees for vacation and holiday time, not on any policy set forth in R.C. 4113.15(C). Whether the handbook created an agreement on Blossom's behalf to pay Hurd for vacation and holiday time is currently pending before the trial court in a separate case entitled, *Hurd v. Blossom 24 Hour We Care Ctr., Inc.*, Cuyahoga C.P. No. CV-736014. Moreover, the public policy in R.C. 4113.15(C) that an employer must pay agreed upon payments when due is protected by the fact that an employee can bring a breach of contract claim if payment is not made pursuant to the agreement. Therefore, a wrongful termination action is not necessary to prevent the policy from being jeopardized. Accordingly, Hurd's first assigned error is overruled.

## Retaliatory Termination under FLSA

{¶21} In her second assigned error, Hurd argues the trial court erred in granting summary judgment on her retaliation claim.

{¶22} To establish a prima facie case of retaliation under the FLSA, Hurd must prove that (1) she engaged in a protected activity under the FLSA; (2) her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and

the adverse employment action. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, at ¶ 13.

**{¶23}** In the instant case, there is no evidence that Hurd engaged in protected activity by requesting overtime. The U.S. Supreme Court has held that home health care workers are not entitled to overtime compensation because they constitute FLSA-exempt "domestic service" employees. *Long Island Care at Home Ltd. v. Coke,* 551 U.S. 158, 127 S. Ct. 2339, 168 L.Ed.2d 54 (2007). Thus, because Hurd is exempt, her request for overtime did not constitute a protected activity. We note both parties seem to argue that if Hurd had a good faith belief she was entitled to the wages she could bring a retaliation claim. However, the case cited in support of the good faith belief argument, *Booker v. Brown & Williamson Tobacco Co.*, 897 F.2d 1304, 1312-1313 (6th Cir. 1989), is a Title VII case, not a FLSA case. Thus, because Hurd did not engage in protected activity, she has failed to set forth a prima facie case of retaliation. Accordingly, Hurd's second assigned error is overruled.

**{¶24}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER,   J., and
MARY EILEEN KILBANE, J., CONCUR