UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-1856

_____

UNITED STATES OF AMERICA

(Plaintiff-Appellee)

v.

DAVID LAMBERT

(Defendant-Appellant)

_____
Appeal from the United States District Court
for the Northern District of Mississippi
_____

(June 8, 1992)

Before WISDOM, GARZA, Reynaldo G., and JONES, Circuit Judges.

GARZA, Reynaldo G., Circuit Judge:


PRELIMINARY STATEMENT

In this case, defendant-appellant complains that the sentencing court improperly and unreasonably departed upward from the Sentencing Guideline range. For the reasons discussed below, we affirm the sentence of the district court.

1

PROCEDURAL HISTORY

On or about February 21, 1991, David Lambert, appellant herein, was indicted in the United States District Court for the Northern District of Mississippi. The indictment charged:

> On or about June 15, 1990, in the Northern District of Mississippi, the defendant, DAVID LAMBERT, did while in the lawful custody of an institution and facility in which he was confined by the direction of the Attorney General of the United States and a judgment and commitment order of the United States District Court for conviction of a felony, did [sic] knowingly escape from said institution and facility, in violation of Section 751(a) of Title 18, United States Code.
> (nm $250,000 or nm 5 years or both)

Lambert pled guilty on April 24, 1991, and a presentence investigation report was prepared. On July 31, 1991, a sentencing hearing was conducted. The presentence report determined that Lambert had an offense level of seven and a criminal history category of V which provided for an imprisonment range of 12 to 18 months according to the United States Sentencing Guidelines. On July 31, 1991, the district court departed upward from the Guidelines range and sentenced Lambert to imprisonment for 36 months, twice the maximum Guideline sentence, and three years of supervised release. The district court imposed no fine beyond a $50 special assessment due to Lambert's inability to pay.

FACTS

On June 15, 1990, Lambert was in federal custody and assigned to the Community Treatment Services Center ("CTSC") at Tupelo, Mississippi, having been sentenced on June 17, 1986, to

2

serve four years and two years consecutively for a conviction under Title 18 U.S.C. §§ 2 and 494 (possessing with intent to alter and publish altered United States postal money orders). Lambert was to be eligible for parole on September 21, 1991. On June 15, 1990, after being assigned to the CTSC for less than one month, he was given a weekend pass to visit the residence of one W.C. McHardy in Boyle, Mississippi, and failed to return to the CTSC. An arrest warrant was issued immediately, but because Lambert was hiding in a specially arranged compartment in the home of McHardy, the warrant was not served until February 3, 1991. McHardy was subsequently charged and convicted for harboring and containing, assisting and abetting an escaped federal prisoner.

Lambert's presentence report suggested that an upward departure might be appropriate "since the criminal history category may significantly under-represent the seriousness of the defendant's criminal history or the likelihood that he will commit further crimes." The report cited two reasons for this assertion. First, Lambert received two convictions in 1978, one for an armed robbery committed on August 14 and one for a burglary committed on August 15. These convictions were consolidated for sentencing so Lambert received only three criminal history points. Second, the report noted that Lambert committed two offenses, including the instant conviction, while in custody.

At the sentencing hearing, the district judge briefly

3

summarized Lambert's criminal history, which began with an armed robbery in 1976, for which Lambert received two years imprisonment. Shortly after being released, Lambert used a pistol to rob a woman, and the following day committed burglary in a store owned by the woman's family. Lambert was sentenced to ten years on the robbery count and six years on the burglary count, and served the terms concurrently.

Seven years after the commencement of Lambert's incarceration at the Mississippi State Penitentiary, he was found in possession of forged U.S. Postal Service money orders. After Lambert was discharged from the Mississippi facility, he began to serve a six year term in federal prison, and thereafter committed the instant offense.

At the sentencing hearing for the instant offense, the court stated:

> What really concerns me, first of all, are two offenses where weapons were used, first a knife and then a gun. But to show total disrespect for the law while you were incarcerated first in the Mississippi State Penitentiary [and] in there you committed a federal crime. While incarcerated in the federal penitentiary you committed another federal crime...
>
> The armed robbery and burglary convictions in 1978 were consolidated for sentencing, and they resulted only in three criminal history points. You haven't committed just one offense while in custody; you have committed two while lawfully incarcerated on other charges.
>
> If ever there was an instance where the guidelines did not adequately consider the seriousness of the offense that you have committed, considering your criminal history as a whole, this is that case.
>
> I'm of the opinion that your criminal history, particularly the two offenses committed while in lawful

4

custody on other offenses, are significantly more serious than that of most defendants who are in this same criminal history category.  And you're in a criminal history category of V, even after giving you the two points for the acceptance of responsibility. <u>VI is the highest.</u>

<u>But I do not believe that the guidelines in this case adequately reflect the seriousness of the offense nor do they adequately provide punishment commensurate to the gravity of the offense in this case considering your criminal history category as a whole.</u>

[Emphasis added].

Accordingly, the court departed upwards in sentencing Lambert.  Lambert appeals.


ANALYSIS

Lambert contends that the district court failed to provide acceptable reasons for the departure, and that, even if acceptable reasons existed, the departure was unreasonable.  In reviewing a challenge to a sentence, we must accept the factual findings of the district court unless clearly erroneous.  "A departure from the guidelines will be affirmed if the district court offers 'acceptable reasons' for the departure and the departure is 'reasonable.'"  <u>United States v. Velasquez-Mercado</u>, 872 F.2d 632 (5th Cir.)(<u>quoting</u> <u>United States v. Mejia-Orosco</u>, 867 F.2d 216, 219 (5th Cir. 1989)), <u>cert.</u> <u>denied</u>, 493 U.S. 866 (1989).


I. <u>The District Court Provided Acceptable Reasons for the Upward Departure.</u>

18 U.S.C. § 3553(b) authorizes the trial court to sentence a

5

defendant for an imprisonment term outside the range established by the Guidelines if the court finds that an aggravating or mitigating circumstance exists of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. Guideline § 4A1.3, p.s. implements 18 U.S.C. § 3553(b) and provides further guidance by stating that "[a] departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes."

18 U.S.C. § 3553(c)(2) requires the sentencing court, at the time of sentence, to articulate specific reasons for imposing a sentence outside the range provided for by the Guidelines. We have stated:

> When a district court relies on Section 4A1.3 to depart from the established guidelines, it should articulate its reasons for doing so explicitly. We do not, of course, require sentencing judges to incant the specific language used in the guidelines, and, indeed, such a ritualistic recital would make the sentence less comprehensible to the defendant and our review more difficult. What is desirable, however, is that the court identify clearly the aggravating factors and its reasons for connecting them to the permissible grounds for departure under section 4A1.3.

United States v. de Luna-Trujillo, 868 F.2d 122, 124 (5th Cir. 1989).

The district court evinced concern over Lambert's use of weapons in two of his past crimes, something not taken into

6

consideration by the Guidelines.[1]  The court also mentioned the fact that Lambert had committed two offenses, armed robbery and burglary, which added only three criminal history points to his calculation because the Mississippi court had consolidated the offenses for sentencing.

Guidelines § 4A1.2(a)(2) allows for related cases to be treated as one for sentencing purposes.  Lambert argues, therefore, that the Sentencing Commission fully considered the effect of consolidated sentences such as the Lambert's in formulating the Guidelines.  As the Supreme Court has recently concluded, "it is an incorrect application of the Guidelines for a district court to depart from the applicable sentencing range based on a factor that the Commission has already fully considered in establishing the guideline range..."  Williams v. United States, 60 U.S.L.W. 4206, 4208 (U.S. March 10, 1992).  If the sentencing court relied on an incorrect factor in deciding to depart, then there has been an incorrect application of the Sentencing Guidelines under 18 U.S.C. § 3742(f)(1) and "a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the

---

[1]     Guidelines § 5K2.6, p.s. lists the possession or use of weapons or dangerous instrumentalities to commit crimes as a ground for departing above the normal Guideline range.  While we note that the Guidelines refer here to departures due to the gravity of the crime rather than to departures due to the under-representation of criminal history, we nevertheless find this instructive because criminal history categories may not take into account the gravity of past wrongdoing.

sentence imposed."  60 U.S.L.W. at 4209.

We do not believe, however, that the district court misapplied the Guidelines.  Comment 3 to section 4A1.2 states:

> The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public.  For example, if the defendant was convicted of a number of serious non-violent offenses committed on different occasions, and the resulting sentences were treated as related because the cases were consolidated for sentencing, the assignment of a single set of points may not adequately reflect the seriousness of the defendant's criminal history or the frequency with which he has committed crimes.  In such circumstances, an upward departure may be warranted.  Note that the above example refers to serious non-violent offenses. Where prior related sentences result from convictions of crimes of violence, § 4A1.1(f) will apply.

An upward departure in criminal history due to the crimes committed against the Mississippi family seems especially apropos.  The crimes, performed on different days, were certainly serious.  In fact, Lambert threatened Ms. Breaux in Mississippi with a pistol.  Certainly Lambert had become no less violent then when he committed his 1976 offense involving a knife. Nevertheless, Lambert escapes application of section 4A1.1(f) because the consolidated crimes did not involve a <u>series</u> of violent offenses.

The district court also pointed out that Lambert displayed contempt for the law by committing crimes while in lawful custody for other offenses.  While the Guidelines do take into account the obvious fact that Lambert was in custody when he escaped, they fail to consider that he was in custody when he was in

8

possession of forged money orders.

Lambert argues that the district court failed to state its reasons for departing with sufficient clarity, and cites <u>United States v. Shaw</u>, 891 F.2d 528 (5th Cir. 1989), where we remanded the case after the district court had given a 60 month sentence to a defendant whose Guideline range was from 30 to 37 months. We note that the district court in <u>Shaw</u> was not as precise as the sentencing court in this case regarding the reasons for its sentence. More importantly, however, the district court in <u>Shaw</u> was apparently unaware that it <u>had</u> departed. <u>Id.</u> at 529. This was an incorrect application of the Guidelines which mandated a remand under the emerging jurisprudence which recently culminated in the Supreme Court's opinion in <u>Williams</u>, <u>supra.</u>

II. <u>The Extent of the District Court's Departure was Reasonable.</u>

Lambert argues that even if an upward departure was warranted, the extent of the departure was unreasonable. We do not agree.

Lambert maintains that the district court erred in failing to consider a sentence within the next highest criminal history category, <u>i.e.</u>, category VI. Guidelines § 4A1.3, p.s., states, in pertinent part:

> In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable. For example, if the court concludes that the defendant's criminal history category of III significantly under-represents the seriousness of the defendant's criminal history, <u>and that the seriousness</u>

9

of the defendant's criminal history most closely
resembles that of most defendants with a Category IV
criminal history, the court should look to the
guideline range specified for a defendant with a
Category IV criminal history to guide its departure.
The Commission contemplates that there may, on
occasion, be a case of an egregious, serious criminal
record in which even the guideline range for a Category
VI criminal history is not adequate to reflect the
seriousness of the defendant's criminal history.  In
such a case, a decision above the guideline range for a
defendant with a Category VI criminal history may be
warranted.  However, this provision is not symmetrical.
The lower limit of the range for a Category I criminal
history is set for a first offender with the lowest
risk of recidivism.

[Emphasis added].


Lambert contends that this policy statement requires that

the district court clearly state that it considered a sentence

within Criminal History Category VI and specifically explain why

such a sentence is inadequate.  As explained below, we have held

that it is appropriate, as a prophylactic measure, for sentencing

courts to take such measures when the defendant's criminal

history category is low and it is not therefore initially

apparent that the risk of recidivism is great.  We do not,

however, read the policy statement as mandating a step by step

procedure, especially not where the criminal history category is

high.  The policy statement indicates that the sentencing court

should look to the next highest category if the seriousness of

the defendant's criminal history most closely resembles that of

most defendants with the next highest category.  It does not say

that the sentencing court must do so if the seriousness of the

defendant's criminal history does not resemble that of most

defendants with the next highest category.  We read the policy

statement to mean that the Sentencing Commission intended that

the court explain why it reached the level of departure that it

did, not why it did not reach some other level.[2]

Clearly, the higher the criminal history category, the

greater the chance of recidivism.  In <u>United States v. Lopez</u>, 871

F.2d 515 (5th Cir. 1989), the defendant scored a zero in the

---

[2]     In <u>Williams</u>, the district court had departed on grounds
that were in part contrary to Section 4A1.3, p.s., in that it
relied <u>inter alia</u> on defendant's arrest record.  The dissent
argued that a violation of a policy statement is not a violation
of a Guideline.  The majority answered by saying that

> to say that guidelines are distinct from policy
> statements is not to say that their meaning is
> unaffected by policy statements.  Where, as here, a
> policy statement prohibits a district court from taking
> a specified action, the statement is an <u>authoritative
> guide</u> to the meaning of the applicable guideline.  An
> error in interpreting such a policy statement <u>could</u>
> lead to an incorrect determination that a departure was
> appropriate.

<u>Williams v. United States</u>, 117 L.Ed.2d 341, 353 (1992)(emphasis
added).

The Supreme Court clearly resolved that Section 4A1.3's
prohibition against relying on arrest records for departure
purposes was a correct interpretation of the Guidelines by the
Sentencing Commission.  We do not believe that the Supreme Court
meant that an <u>authoritative guide</u> to the meaining of Guidelines
is an infallible guide.  While the Supreme Court stated that a
misapplication of a policy statement <u>could</u> lead to misapplication
of the Guidelines "where ... a policy statement prohibits a
district court from taking a specified action," it did not state
that it <u>must</u> so lead, especially in a case where, as here, the
policy statement does not prohibit the district court from taking
a specified action, but merely explains how that action should be
taken.  Even if our interpretation of <u>Williams</u> is in error,
however, it would not alter the outcome of the case before us as
we conclude that the district court did not misapply the policy
statement.

11

criminal history calculation which, along with her offense level of nine, rendered a sentencing range between four to ten months. The district court, however, more than doubled the maximum and sentenced her to two years imprisonment, which was at the top of the range for a defendant with a criminal history category of V. In such a situation, we held that such a sentence is improper unless the district court states that it has considered sentences corresponding to lower criminal history categories and explains why such sentences are inadequate. Id. at 515.

We have held, however, that Lopez is most applicable in cases where the defendant's criminal history category is low. United States v. Harvey, 897 F.2d 1300, 1306 (5th Cir.), cert. denied, 111 S.Ct. 568 (1990). In cases such as the one before us, where the defendant has been in the criminal justice system virtually his entire adult life and has shown a consistent disrespect for the law, it is not so important that the sentencing court explain fully why sentences corresponding to lower criminal history categories do not suffice. In Harvey, the defendant had a base offense level of 9 and a criminal history category of V. After various adjustments, the applicable sentencing range was between 18 to 24 months. The district court, however, more than doubled the maximum amount and sentenced Harvey to the statutory maximum of 60 months, without explicitly stating that it had considered a sentence within the category VI range and had found it inadequate. Relying on United States v. Geiger, 891 F.2d 512 (5th Cir. 1989), cert. denied, 494

12

U.S. 1087 (1990), we affirmed, stating that "Lopez was confined to those cases where a defendant's criminal history category is low," and is not as applicable in a case where the criminal history category was V. 897 F.2d at 1306.

Nevertheless, in United States v. Jones, 905 F.2d 867 (5th Cir. 1990), we remanded for resentencing notwithstanding the fact that the defendant had a criminal history category of V. In Jones, the district court had sentenced the defendant to a prison term four times the applicable Guideline maximum. Relying on United States v. Landry, 903 F.2d 334 (5th Cir. 1990)(vacating sentence 3.5 times greater than the Guideline maximum), we remanded for a more complete explanation of the departure. What disturbed us most in Jones, however, was that the sentencing court did not fully explain why it departed at all. The district court recited the defendant's criminal history, but did not state why category V was inadequate. To then depart to such a great extent was unacceptable.

In the case before us, the district court was more explicit than were the courts in Lopez, Jones or Landry. Moreover, the extent of the departure was less than in any of these cases, including Harvey. Therefore, we find that Harvey governs this case, and we hold that the district court did not err in failing to be more explicit than it was. We do not require that sentencing courts make explicit analogies to other criminal history categories in all cases because, as was explained in one scholarly article,

13

> [r]equiring courts to look to analogies on all occasions would prove unduly burdensome, adding needlessly to the strain which guideline sentencing has already put on overtaxed judicial resources.  Thus, in light of the diverse and unforeseen situations that sentencing courts confront, as well as Congress' intent not to desiccate the limited discretion that remains after implementaion of the Guidelines, any absolute requirement to link unguided[3] departures to the Guidelines unjustifiably infringes on the domain of the sentencing court, increasing complication and uncertainty in the law without securing any practical advantage.  The concern should be with the reasonableness of the sentence imposed, not with the intricacies of the calculations that produced it.

Selya and Kipp,[4] An Examination of Emerging Departure Jurisprudence Under the Federal Sentencing Guidelines, 67 Notre Dame Law Review 1, 49 (1991).

Nor do we believe that the district court abused its discretion in the amount of the departure.  As we stated in affirming a sentence of 36 months when the Guideline range was between ten and sixteen months,

> [w]e will not disturb a sentence that falls within the statutory limits, even though an upward departure from the Guidelines, absent a "gross abuse of discretion."

United States v. Perez, 915 F.2d 947, 948 (5th Cir. 1990)(quoting United States v. Murillo, 902 F.2d 1169 (5th Cir. 1989)).  See

---

[3] We view departures from the upper criminal history categories under Guidelines § 4A1.3 as basically "unguided," i.e., as similar to departures under § 5K2.0, as opposed to "guided" departures, such as those under Guidelines § 2G1.1, comment (n.1)(with respect to offense of interstate transportation of prostitutes, where the defendant did not commit the offense for profit and the offense did not involve physical force or coercion, a downward departure of 8 levels is recommended).

[4] This article was authored by the Honorable Bruce M. Selya, Judge, United States Court of Appeals for the First Circuit, and his former law clerk, Matthew R. Kipp.

also <u>United States v. Campbell</u>, 878 F.2d 164 (5th Cir. 1989)(affirming sentence 3 1/2 times the Guideline maximum).

<u>CONCLUSIONS</u>

The district court sufficiently explained its reasons for departing in this case.  Moreover, doubling the maximum Guideline sentence was not unreasonable.  Therefore, the decision of the sentencing court is

AFFIRMED.[5]

JONES, Circuit Judge, concurring specially:

Because I believe it is possible, although not necessarily wise, to reconcile the district court's sentencing procedure in this case with our <u>Lopez</u>[6]-<u>Harvey</u>[7] line of cases, I concur in the result reached by Judge Garza's opinion.  As will be seen, I also agree with much of Judge Wisdom's analysis and would urge the court to consider this issue en banc.

A couple of additional facts bolster my decision. First, while Lambert's pre-sentence report calculated a criminal

_____

[5]    As author of this opinion, I have no objection to the suggestion of my colleagues that we take this question <u>en</u> <u>banc</u> to settle our jurisprudence.

[6]    <u>United States v. Lopez</u>, 871 F.2d 513 (5th Cir. 1989).

[7]    <u>United States v. Harvey</u>, 897 F.2d 1300, 1306 (5th Cir.), cert. denied, 111 S. Ct. 568 (1990).

15

history category of V with a corresponding suggested imprisonment range of 12 to 18 months, the sentencing range for a defendant with a criminal history category VI would have elevated the maximum sentence to only 21 months.  The statutory maximum, on the other hand, is five years, and the district court imposed a sentence of 36 months.  Measured against the statutory maximum and the patent inadequacy of the sentence under a criminal history category V, as the district court specifically recognized, Lambert's 36-month sentence does not seem improper. My colleagues do not disagree on the reasonableness of the ultimate sentence.

The point Judge Wisdom's dissent powerfully asserts is that § 4A1.3 required the district court to articulate additional reasons why Category VI would have been inadequate here.  But it is not clear to me that the Commentary to the Guidelines requires the step-by-step process <u>in a case like this</u>.  I think there is a common-sense reason for the rule stated in <u>Harvey</u>, that a district court's articulation of its departure need not necessarily proceed step-by-step when the defendant is already at a high criminal history category.  When the history is Category V, as here, the district court has only two possible upward departures.  Those are specified in Category VI and above to the statutory limit.  When the defendant's previous criminal record indicates not only violent crimes but a propensity to return to crime every time he got out of the penal system, it is obvious beyond peradventure that elevating him to a criminal history

16

category that would <u>at most</u> increase his incarceration by three months is inadequate.  We can see this inadequacy, the district court could see this inadequacy, and I think it elevates the intricacy of the Guidelines beyond all reason to require a remand when the sentence will not change and all we are requiring the district court to do is to state the obvious.

However, I agree with Judge Wisdom that the Supreme Court's recent <u>Williams</u> decision implies a more hypertechnical review of departure sentences than we have sanctioned in cases like <u>Perez</u>[8].  I also agree that <u>Williams</u> requires district courts to employ Guideline commentary seriously.  But I think both those approaches can be reconciled with our <u>Lopez-Harvey</u> rules in the following way.  When a criminal history category is low, the step-by-step analysis is appropriate because there are a number of intermediate sentencing decisions that the district court might make.  Section 4A1.3 tells the district courts to make these intermediate decisions systematically.  Where, however, we are at history Category V, as I said before, there are only two upward possibilities.  In this case, at least, the district court's preference for a sentence above Category VI is so plainly understood as to easily permit appellate review and to satisfy the rationale of § 4A1.3.

Under these narrow circumstances, I do not believe that the district court <u>misapplied</u> § 4A1.3, as Judge Wisdom contends.

---

[8]     <u>United States v. Perez</u>, 915 F.2d 947, 948 (5th Cir. 1990).

17

On the other hand, because our court's jurisprudence construing § 4A1.3 is very difficult to interpret, and because it may well conflict with decisions from most other circuits, I believe we should consider the standard for evaluating departures based on criminal history en banc.  I urge the court to do so.


WISDOM, Circuit Judge, concurring and dissenting.


The majority recognizes that our Court's decisions on the proper application of Guideline § 4A1.3 are inconsistent and unclear.  This case deserved oral argument before our panel and now deserves oral argument before the en banc Court.  I therefore concur in the suggestion for rehearing.

The majority has tried bravely to find a path of reason through the thicket of our Court's inconsistencies in applying a guideline that is clear yet very possibly unreasonable.  The majority has tried to temper that rule with its own idea of the rule's more reasonable construction.  Because that construction results in a misapplication of the Guidelines, because it contradicts my interpretation of our first panel opinion on this issue, because almost every other circuit court to have considered the question disagrees, and because it seems to contradict the approach of the Supreme Court's most recent opinion on the Guidelines, I respectfully dissent.

18

I.    The Letter of the Law

The conclusion to U.S.S.G. § 4A1.3 (**Adequacy of Criminal History Category**) provides that:

> In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable.  For example, if the court concludes that the defendant's criminal history category of III significantly under-represents the seriousness of the defendant's criminal history, and that the seriousness of the defendant's criminal history most closely resembles that of most defendants with a Category IV criminal history, the court should look to the guideline range specified for a defendants with a Category IV criminal history to guide its departure. The Commission contemplates that there may, on occasion, be a case of an egregious serious criminal record in which even the guidelines range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a decision above the guidelines range for a defendants with a Category VI criminal history may be warranted.

Without requiring the court to go through an extensive elaboration of its method in departing upwards, this rule clearly requires the court to depart upwards gradually, one step at a time, to explain why each step it leaves behind is inappropriate for the defendant, and to stop at the criminal history category that most accurately reflects the defendant's actual criminal history.[9]

---

[9]  I also read § 4A1.3 to state that departing above a criminal history category of VI should be done in only the very rare case.  The argument could be made that Lambert's is not the sort of "egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness" of his criminal history.  I do not make that argument here; a departure above a criminal history category of VI is not presumptively invalid in this case. What I do argue is that the district court did not reach the

18 U.S.C.S. § 3742 controls our appellate review of sentencing decisions. Subsection 3742(f)(1) requires us to remand sentences that result from "an incorrect application of the sentencing guidelines". Both the government and the majority concede that the court's departure did not precisely follow § 4A1.3. The question before us is whether the district court correctly applied the guidelines. The answer, unavoidably, is "No". I would remand for resentencing.

## II.  Fifth Circuit Precedent

The first panel of this Court to consider § 4A1.3 seemed to agree with the position I take. In United States v. Lopez[10] we wrote:

> The Guidelines require sentencing courts first to consider upward adjustments of the criminal history category, where a defendant's score appears inadequately to reflect his or her history, before a departure sentence may be justified on this basis. Where this is not done, resentencing is appropriate.[11]

Lopez apparently reads § 4A1.3 as I would, as a rule requiring the sentencing court to follow the step-by-step procedure whenever it departs because of an inadequately representative criminal history category. Lopez involved a defendant with a very low criminal history category (I) to whom the court applied a criminal history category of V. Later panels of this Court

---

sentence it imposed in the manner that the Guidelines insist it must.

[10]  871 F.2d 513 (5th Cir. 1989).

[11]  Lopez, 871 F.2d at 515.

have since tried -- as the majority here tries -- to limit the rule of <u>Lopez</u> to its facts by denying the benefit of § 4A1.3 to defendants who start off with high criminal history categories. In my view, such a limitation of the rule reads <u>Lopez</u> with inappropriate narrowness and misapplies the clear mandate of the Guidelines themselves.

In <u>United States v. Harvey</u>,[12] the Court wrote that "[i]t is important to note, however, that the [<u>Lopez</u>] Court's holding was narrow, and was confined to those cases with 'low history scores' . . . . As mentioned above, <u>Lopez</u> was confined to those cases where a defendant's criminal history category is low." I do not read <u>Lopez</u> so to hold. The only statement in <u>Lopez</u> implying such a limitation on a rule that lacks such a limitation is the following:

> In so holding, we emphasize that in some cases involving defendants with low criminal history scores, it may be justified to impose a sentence reflecting a much higher criminal history category or to go beyond the range corresponding to the highest category VI. However, in such cases the sentencing judge should state definitely that he or she has considered lesser adjustments of the criminal history category and must provide the reasons why such adjustments are inadequate.

871 F.2d at 515. I do not read this to modify the holding, as quoted above, to apply § 4A1.3 <u>only</u> to cases where the criminal history category is low. The statement merely applies the Court's holding to the facts before it, and confirms that the departure <u>may</u> go off the charts even when the criminal history

---

[12] 897 F.2d 1300, 1306 (5th Cir.), <u>cert. denied</u>, 111 S. Ct. 568 (1990).

category is low, so long as the court justifies it in the manner mandated by § 4A1.3.  Such a statement does not mean that departing above a category of VI need not be so justified if the criminal, in the majority's words, "has shown a consistent disrespect for the law".

The misreading of <u>Lopez</u> in <u>Harvey</u> has been both avoided and repeated, and the Court has refused to resolve the conflict.  In <u>United States v. Jones</u>,[13] the Court chose to apply <u>Lopez</u> as the original case on the subject, "necessarily leaving to the en banc court the resolution of any inconsistency or conflict."  In <u>United States v. Williams</u>,[14] however, the Court followed <u>Harvey</u> in holding that the sentencing court is not required to state that lesser adjustments were considered and found inadequate. Ignoring the real holding of <u>Lopez</u>, which simply applies § 4A1.3, as well as the wiser course followed in <u>Jones</u>, the Court in <u>Williams</u> felt confident in stating that the "Guidelines and our precedent . . . do not support" a detailed justification of upward departures:  "<u>Lopez</u> dealt with the very narrow situation where the criminal history category was underrepresented and the district court made a drastic upward departure which did not neglect the discrepancy."[15]  Again, although a holding must be limited to the facts of the case before it, nothing in <u>Lopez</u> suggests that its holding <u>should</u> be limited to its facts, nor --

---

[13]  905 F.2d 867, 869 (5th Cir. 1990).

[14]  937 F.2d 984 (5th Cir. 1991).

[15]  <u>Id.</u> at 984.

if we so limit it -- did the <u>Lopez</u> panel have the authority to prevent the application of § 4A1.3 in other, different cases.

I cannot accept the majority's attempt to distinguish <u>Lopez</u> and <u>Jones</u>. We are told that <u>Lopez</u>, in which the defendant's criminal history category was I, means that § 4A1.3 applies rigorously only when the criminal history category is low. Then we are told that the remand in <u>Jones</u> (in which the criminal history category was V) was required not because of § 4A1.3 but because the departure was inadequately explained. That contention misreads the plain language of <u>Jones</u>, in which the Court wrote that the departure was inadequately justified <u>because</u> the sentencing court failed to follow the procedures of § 4A1.3. There is nothing in <u>Jones</u> to suggest that the district court could adequately justify a departure without <u>also</u> complying with § 4A1.3.[16]

In effect, the majority is stating that literal compliance with § 4A1.3 is required only when the criminal history category is low; in every other case, in contravention of § 4A1.3 itself, almost any reference to the grounds for departure will be considered adequate to support a greatly increased sentence. No

---

[16] In <u>Jones</u> the Court showed how the sentencing court's departure was inadequately explained by showing how it failed to comply with § 4A1.3:

> The court's explanation for departing from the scheme of the guidelines does not comport with the statutory and guideline requisites. The court bypassed Criminal History Category VI, one step above Jones' category of V, but did not state its reasons for doing so. More fundamentally, it did not specify why Criminal History Category V was inadequate.

<u>Jones</u>, 905 F.2d at 870 (footnote omitted).

other opinion has yet inserted this distinction into the Guidelines.  The majority has erred in ignoring the straightforward interpretation of § 4A1.3 in <u>Lopez</u> and <u>Jones</u>.

III. <u>Case Law in Other Circuits</u>

A strict construction of § 4A1.3 accords with almost every circuit court to have considered the question.  The D.C., 2nd, 4th, 6th, 7th, 8th, and 11th Circuits have unequivocally confirmed a strict reading of § 4A1.3.[17]  (Many other circuits have cited <u>Lopez</u> to support that reading.)[18]  The 10th Circuit, sitting <u>en</u> <u>banc</u>, has refused to require a mechanistically sequential application of § 4A1.3, but in the same case it vacated and remanded a sentence very similar to the sentence

_____

[17]  <u>See</u> <u>United States v. Taylor</u>, 937 F.2d 676, 683 (D.C. Cir. 1991); <u>United States v. Johnson</u>, 934 F.2d 1237, 1239 (11th Cir. 1991); <u>United States v. Lassiter</u>, 929 F.2d 267, 270 (6th Cir. 1991); <u>United States v. Thomas</u>, 906 F.2d 323, 329 (7th Cir. 1990); <u>United States v. Thomas</u>, 914 F.2d 139, 144 (8th Cir. 1990); <u>United States v. Summers</u>, 893 F.2d 62, 68 (4th Cir. 1990); <u>United States v. Coe</u>, 891 F.2d 405, 412-14 (2d Cir. 1989).

[18]  <u>See</u>, <u>e.g.</u>, <u>Taylor</u>, 937 F.2d at 683; <u>United States v. Polanco-Reynoso</u>, 924 F.2d 23, 25 (1st Cir. 1991); <u>United States v. Fayette</u>, 895 F.2d 1375, 1379 (11th Cir. 1990); <u>United States v. Kennedy</u>, 893 F.2d 825, 829 (6th Cir. 1990); <u>Summers</u>, 893 F.2d at 68; <u>Coe</u>, 891 F.2d at 412; <u>United States v. Jackson</u>, 883 F.2d 1007, 1009 (11th Cir. 1989); <u>United States v. Cervantes</u>, 878 F.2d 50, 54 (2d Cir. 1989).  In the law review article cited by the majority, Judge Seelya of the 1st Circuit also cites <u>Lopez</u> for the proposition that in the 5th Circuit "the sentencing court must follow [the] course" of § 4A1.3 strictly.  Bruce M. Seelya and Matthew R. Kipp, <u>An Examination of Emerging Departure Jurisprudence Under the Federal Sentencing Guidelines</u>, 67 Notre Dame L. Rev. 1, 41 n. 212.  The majority thus finds less precedential value in our own earlier holding than do the judges of several other courts.

imposed in this case.[19]  The 1st Circuit, although it acknowledges the unavoidably clear meaning of § 4A1.3,[20] has affirmed upward departures that lacked a step-by-step explanation when there were alternate justifications for the departure.[21] Although the 9th Circuit similarly affirms the plain meaning of § 4A1.3,[22] it has in at least one case suggested that a district court's non-compliance with § 4A1.3 can be reviewed only for reasonableness under 18 U.S.C.S. § 3742(f)(2).[23]  In sum, no other circuit court holds that the application of § 4A1.3 is

---

[19]  United States v. Jackson, 921 F.2d 985, 991 (10th Cir. 1990) (en banc).  The Court found in Jackson that even though the sentencing court had adequately justified its grounds for departure and even though its degree of departure was not presumptively unreasonable it had failed to explain the degree of departure.  See Jackson, 921 F.2d at 992. ("The court only offered its reasons for departing but did not provide any justification for the degree of departure.  The court did not rely on the Guidelines to find analogous levels and principles to guide its degree of departure.")  (I discuss and distinguish these tests further in note 18, below).  I therefore read even Jackson -- a case that refuses to apply § 4A1.3 strictly -- to require a remand in this case.

[20]  See United States v. Figaro, 935 F.2d 5, 8 (1st Cir. 1991); United States v. Aymelek, 926 F.2d 64, 70 and n. 4 (1st Cir. 1991); Polanco-Reynoso, 924 F.2d at 25.

[21]  See Figaro, 935 at 8-9; Aymelek, 926 F.2d at 70; United States v. Rodriguez-Cardona, 924 F.2d 1148, 1157 (1st Cir. 1991).

[22]  See United States v. Rodriguez-Castro, 908 F.2d 438, 442-43 (9th Cir. 1990); United States v. Cervantes-Lucatero, 889 F.2d 916, 919 (9th Cir. 1989).

[23]  United States v. Diaz-Villafane, 874 F.2d 43, 49-50 (9th Cir. 1989).  The Supreme Court's recent decision in Williams v. United States, 117 L.Ed.2d 341 (1992), would presumably reverse this last result; it confirms that § 3742(f)(1) requires appellate courts to reverse for incorrect applications of the Guidelines even where the departure in question would be reasonable under § 3742(f)(2).

required in decreasing proportion to the defendant's criminal history category.

I therefore find no support for the majority position in the Guidelines themselves or in the well-reasoned precedents of this or other circuits. Without the rule, there might be no logical reason to demand that district courts jump through this procedural hoop; the majority quotes academic support for that position.[24] But the rule is there. I do not think that we may replace the Guidelines with our own conception of how they should most reasonably be construed. I find final support for this strict constructionism in the Supreme Court's most recent opinion on the Guidelines. Although only tangentially related to the issues of this case, Williams v. United States confirms that procedural provisions such as § 4A1.3 must be strictly obeyed.

IV. Williams v. United States

In Williams v. United States the Court determined in which cases an appellate court must reverse a sentence when the district court has departed for one permissible and one impermissible reason. Although its holding on this question does not affect this case, the Court's opinion in several ways supports an affirmance of the broad holding in Lopez. First, the

---

[24] Seelya and Kipp, supra note 10. Seelya and Kipp acknowledge that their position goes against all but two circuit courts. Id. at 41 n. 212. Moreover, the language they use, even the language quoted by the majority above, is advisory, and critical -- not descriptive -- of the state of the law. They purport to say not what the Guidelines say, but what they should say. See id. at 49.

Court finds little, if any, distinction between a "policy statement" and a "true" guideline; although § 4A1.3 is a "policy statement", it must be obeyed.[25]  Second, the Court reminds us that in certain situations we must reverse a sentence imposed below: whenever the sentence was imposed as a result of an incorrect application of the guidelines.  Third, in the face of a sharp dissent, it notes that a general test of reasonability cannot be used to forgive an improper application of the Guidelines.  Even if the sentence imposed was within the statutory minimum, it must be vacated if it was imposed through an improper application of the Guidelines.[26]

_____

[25]  The majority finds some distinction between what the Court calls an "authoritative guide" and an "infallible guide".  See slip op. at 10-11 n.2.  I find this either a distinction without a difference or a distinction irrelevant in a court whose function is to enforce authoritative law.  I do not contend that § 4A1.3, or any subsection of the sentencing guidelines, is infallible; like other laws, however, if it is authoritative and if its applies we must enforce it whatever we think of its correctness.

The majority also finds a distinction between a "policy statement that prohibits a district court from taking a specified action", Williams, 117 L.Ed.2d at 353, and a policy statement that requires a court to obey a carefully specified procedure.  It would presumably contend that a policy statement that prescribes a  specific method of departing upwards in a limited category of cases does not prohibit a district court from acting otherwise.  I do not read the Court's opinion in Williams so narrowly.  Nowhere does the Supreme Court suggest that using such a distinction -- either between prohibitive and prescriptive policy statements, or between applying the Guidelines with greater or lesser precision according to our view of the defendant's character -- would meet with its approval.

[26]  I therefore take issue not only with the majority result but with the categorization of its analysis.  The majority considers the only questions before it whether the district court provided "acceptable reasons" for the upward departure and whether its departure was reasonable.  It fits the issue of § 4A1.3 into the second question.  The question whether the

Finally, although it was irrelevant to the issues on which certiorari had been granted in <u>Williams</u>, the Court set out the method by which the district court departed upwards; in every way that method complied fully with the requirements of § 4A1.3.[27]

To follow <u>Harvey</u> and the 5th Circuit's <u>Williams</u> case would contradict the Supreme Court's <u>Williams</u> case by suggesting that we can ignore a district court's inattention to § 4A1.3 if the

---

sentencing court has complied with the procedure set out in § 4A1.3, however, is distinct from the question of reasonability. I concede that the district court gave adequate grounds for <u>a</u> departure and I concede that its departure may have been reasonable. Regardless of its possible compliance with those two issues, however, the sentencing court failed to comply with a third and separate procedural requirement that applies <u>only</u> to cases in which the sentencing court feels that the defendant's criminal history category significantly underrepresents his true criminal history. <u>See</u> <u>United States v. Hazel</u>, 928 F.2d 420, 427 (Mikva, J., concurring in part and concurring in the result):

> Section 4A1.3, by dictating how a district court should calculate the scope of a departure, is fundamentally unlike the other departure sections in the Guidelines which leave the degree of a departure entirely to the district court's discretion. <u>See</u> U.S.S.G. §§ 5K1.1 (substantial assistance), 5K2.0 (other factors not considered by the Commission). Indeed, § 4A1.3 is more akin to the adjustments specified in Chapter 3 of the Guidelines which provide for automatic departures in certain circumstances.

[27] <u>See</u> 117 L.Ed.2d at 350-51: "The District Court determined that Williams' criminal history category was inadequate because it did not include two convictions that were too old to be counted in the Guidelines' criminal history calculation, see USSG § 4A1.3 (Nov. 1991), and because it did not reflect several prior arrests. Citing these two factors, <u>the court looked to the next highest criminal history category</u>, for which the guidelines range was 21 to 27 months. The court then sentenced Williams to 27 months' imprisonment and explained that it was selecting a sentence at the high end of the guidelines range because Williams had previously been convicted for the same offense and because he had threatened an undercover agent in this case." (emphasis added) (citations to the record omitted).

defendant's criminal history was already high and if the sentence itself falls within the statutory limits.  Insofar as the quoted phrase from United States v. Perez[28] suggests that we can only review a sentence within the statutory limits for a gross abuse of discretion, it clearly violates Williams v. United States and Guideline § 3742(f)(1)[29] as clarified by the Supreme Court in that case.  That phrase applies only to testing the reasonability of a sentence.  At the very least, the phrase is misleading in its suggestion that we continue to approve clear violations of the Guidelines as long as the departure is not off the charts.  The discretion the Guidelines grant to sentencing courts -- or to us -- does not go so far.

V.  Conclusion

So long as we are going to continue disposing of cases addressing this issue summarily, I feel bound to follow Lopez. Our first case on the subject reads § 4A1.3 to apply to every case in which the sentencing court departs because the criminal

---

[28]  915 F.2d 947, 948 (5th Cir. 1990) ("We will not disturb a sentence that falls within the statutory limits, even though an upward departure from the Guidelines, absent a 'gross abuse of discretion'.")(quoting United States. v. Murillo, 902 F.2d 1169 (5th Cir. 1989).  See slip op. at 14.

[29]  §3741(f)(1) states that if a court of appeals determines that a sentence

> was imposed in violation of law or imposed as a result
> of an incorrect application of the sentencing
> guidelines, the court shall remand the case for further
> sentencing proceedings with such instructions as the
> court considers appropriate . . . .

history category is inadequate.

The revisionistic jurisprudence the majority chooses to follow would class these requirements as technical niceties whose neutral enforcement by the federal courts is "not so important" when the defendant has broken the law more than once. I can find no support in the Guidelines (and the majority cites none) for arguing that a defendant whose criminal history category is high deserves less protection from the requirements of the Guidelines than one whose criminal history category is low. The unequal application of such protection is unjustified in the light of the unambiguous language of the law.[30]    I therefore dissent.

---

[30]  I would also have thought that it was precluded by the Constitution.  Nor does the majority's extreme position have even expediency on its side.  The result of this case will further complicate the already difficult job of the district courts in applying the Guidelines.  How will a sentencing judge know when the defendant before him deserves the protection of § 4A1.3? What if a defendant with a criminal history category of II or III (relatively low) has nevertheless "shown a consistent disrespect for the law"?  How will a district court know when the Guidelines are "not so important"?