**UNITED STATES of America**

v.

**Terry Wayne TOWNLEY.**

**No. CR–91–20008–01.**

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Aug. 11, 1992.

Larry J. Regan, John Luke Walker, Asst. U.S. Attys., Lafayette, La., for plaintiff.

Alcide J. Gray, Lake Charles, La., for defendant.

## MEMORANDUM RULING AND FACTUAL FINDINGS

TRIMBLE, District Judge.

Before the court are several objections to the Probation Department's Presentence Report dated April 7, 1992. In this report, Probation used a base offense level of 24 pursuant to Section 2A4.1(a) of the Sentencing Guidelines. This base offense level was increased by 2 under specific offense characteristics, § 2A4.1(b)(3), because a dangerous weapon was used during the commission of the offense. An additional point was added pursuant to § 2A4.1(b)(4)(B), because the victim was held over seven days. Two points were added pursuant to § 3B1.1(c) because Townley acted as the organizer, leader and manager of this offense. Two points were not subtracted for acceptance of responsibility, giving a total offense level of 29.

■ The attorney for the Defendant has multiple objections to these computations. Objections to Paragraphs 4, 5, 6, 8, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 23, and 25 are based upon factual questions. Probation stated that, in drafting this report, it relied upon FBI reports. An evidentiary hearing was held to clarify these matters on August 10 and 11, 1992, before the undersigned. When resolving disputed facts in a PSI, the government must prove the facts by a preponderance of the evidence. *United States v. Dolan,* 701 F.Supp. 138 (E.D.Tenn.1988); *United States v. Silverman,* 692 F.Supp. 788 (S.D.Ohio 1988); *United States v. Kikumura,* 706 F.Supp. 331 (D.N.J.1989). The District Court then must make factual findings, which will then be a basis for application of the sentencing guidelines. *United States v. Burch,* 873 F.2d 765 (5th Cir. 1989); Rule 32(c) F.R.Cr.P., § 6A1.3(b).

As a result of the evidentiary hearing, the Court finds that the facts related in the Presentence Report and specifically contained in the section titled "The Offense Conduct" are correct with the following amendments:

1. In paragraph 4 of the PSR, it states that Hambrick and Townley met through a friend. This is not correct. Hambrick's testimony indicated that they met when she was babysitting for a friend, but that they were not introduced by the friend. Hambrick did not live in that apartment complex, although they did actually introduce themselves in the laundromat. She did not immediately return with him to his apartment. Additionally, she confirmed that Townley was injured in the beginning of June and she brought him to her apartment from the hospital. They did not live together prior to his accident.

2. In paragraph 5, the court cannot believe the defendant's contention that Hambrick called him on many occasions

while he was in Texas. He would call her and when she would say that she wanted nothing to do with him, he would use foul and disrespectful language. She was too afraid to say much. Townley did have other people call Hambrick's employer.

3. Paragraph 6—Hambrick returned home to find a whiskey bottle, half empty. She did not know if the defendant was drunk. Townley, irate, took her car keys and car without permission. He repeatedly called and harassed her at her place of employment. The only time Hambrick visited with Townley at his parent's home was before they broke up. She never told him that she was pregnant and begged him to come back. He had his mother talk her into seeing Townley when his mother took him to Hambrick's apartment. When Hambrick agreed to talk to him, Townley went into Hambrick's apartment and his mother left. Townley went to jail from there. He lived with Hambrick at this time approximately two weeks. She only saw him once between that time and the kidnapping and that was when she went to see him in the jail. His family and friends had been constantly calling her, trying to get her to drop the charges. She went to talk to him to try to ascertain if this would be a good idea, but based upon his threats at that time, she decided to leave him in jail.

4. Paragraph 8—Townley returned to Hambrick's apartment once again after being released from jail. A friend of Hambrick's would not let him in. She called the police and they arrested him as he returned to her apartment. All of the charges were dropped without her consent.

5. Paragraph 9—Townley threatened Hambrick concerning the custody of her son. The DA eventually dropped half of the charges that she had filed against Townley, but this was the DA's decision. Townley actually moved in with Hambrick's ex-husband and received $ 5,000.00 for signing an affidavit and giving a deposition that he knew was untrue. Townley later formally recanted.

6. Paragraphs 10, 11, 12, 13, 14, 15 and 16—The factual allegations in the PSR are correct.

7. Paragraph 17—When Townley arrived to abduct Hambrick, there was no conversation. He moved quickly and forcefully, without explanation. The court also finds that Townley had a hunting knife in his hand when he jumped out of the car to grab Hambrick. This knife has been admitted into evidence.

8. Paragraph 18—The factual allegations of the PSR are correct.

9. Paragraph 19—Although not at that time, Hambrick did hear Townley threaten Amos several time that if Amos "crossed" him, he would be sorry.

10. Paragraph 20—The facts in the PSR are correct. Townley followed Hambrick into the woods where she had to relieve herself. Although Townley had not hit Hambrick up to this time, she was being held against her will and he had forcefully pushed, pulled and shoved the victim. Hambrick did have sex with Townley without resisting, but that was because she feared for her life. This was not a voluntary act.

11. Paragraph 21—These events took place in Waco, not Abilene. Hambrick did not pawn the microwave alone. Another male escorted her.

12. Paragraph 22—They left Amos telling him that they would return after breakfast, but they never returned for him.

13. Paragraph 23—Hambrick did not tell Townley that she had relatives in Eagle's Nest. She was trying to lead him there because people she knew resided there and she was hoping that she would be recognized, but she did not tell Townley her plan. She did not volunteer to pay their way to California, as she would have never abandoned her two and a half year old son. She did not voluntarily pay for anything, nor did she voluntarily pawn the microwave.

14. Paragraph 24—The facts in the PSR are correct. Hambrick suggested that

they go skiing because she had skied before and Townley hadn't, so she hoped to evade him on the slopes.

15. Paragraph 25 and 26—The factual allegations of the PSR are correct.

The above changes shall be made to the PSR. The remainder of the factual allegations contained in the PSR and not specifically addressed by the court are correct and were not specifically disputed by the defendant.

▇ The defense also objected to Paragraph 30 which adds two (2) points for use of a dangerous weapon. The defense states that, in order to properly apply this enhancement, the weapon needed to be pointed, waved, or displayed in a threatening manner and that Townley merely possessed the weapon. The defense also noted that annotation # 3 of Guideline § 2A4.1 states that the phrase "a dangerous weapon was used", does not mean brandishing or mere possession; Application note 1(g) of § 1B1.1 defines "otherwise used" to mean that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.

Probation and the Government responded to this objection by stating that Townley was armed with a knife while struggling with the victim at her place of employment on January 21, 1991, and was armed with a gun when he went to her residence in De-Quincy on January 20, 1992. The Government asserts that both of these dangerous weapons were not only possessed, but possessed in a dangerous and threatening manner. Additionally, when the victim tried to escape twice from the house in Woodville, Texas, she was pursued by her captors with guns. The first time, Townley followed after her with a gun, threatening to kill her if she did not stop, and the second time, both Amos and Townley chased her with the guns. The Government further argues that the fact that she did not see the knife when Townley initially grabbed her is irrelevant because he had told her later that he had the knife in an attempt to scare her into submission. It is the defendant's motive that is appropriate.

U.S.S.G. § 2A4.1(b)(3) directs a two-level increase "if a dangerous weapon was used." Application Note 2 says that this means "that a firearm was 'discharged', or a 'firearm' or 'dangerous weapon' was 'otherwise used' (as defined in the Commentary to § 1B1.1 (Application Instructions). The Commentary to § 1B1.1 contains the following language at Application Note 1:

"(c) 'Brandish' with reference to a dangerous weapon (including a firearm) means that the weapon was pointed or waved about, or displayed in a threatening manner.

(d) 'Dangerous Weapon' means an instrument capable of inflicting death or serious bodily injury. Where an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon. . . .

(g) 'Otherwise used' with reference to a dangerous weapon (including a firearm) means the conduct did not amount to the discharge of a firearm, but was more than brandishing, displaying or possessing a firearm or other dangerous weapon."

Similar application of the guidelines were discussed in *United States v. Newman*, 931 F.2d 57 (6th Cir.1991); *United States v. De La Rosa*, 911 F.2d 985 (5th Cir.1990); *United States v. Roberts*, 898 F.2d 1465 (10th Cir.1990). In *Newman*, supra, a case in which two men were being tried for kidnapping and forcefully raping a 74 year old woman, the defense argued that the knife involved in this case was merely "brandished" or "displayed", and thus was not "otherwise used." Both the District and Appeals Courts disagreed reasoning that if the defendant had forced the victim to disrobe and submit to rape by holding a gun on her, it would have been clear that the gun, although not discharged, would have been "otherwise used". That the defendant was in fact using a knife instead of a gun when he did these things made no difference at all—the weapon was still dangerous, and its use in that way was clearly sufficient to support a two-level increase. In *De La Rosa*, a kidnapping of a two year

old child, the Fifth Circuit found that the display of a gun sufficient for sentence enhancement under U.S.S.G. § 2A4.1(b)(3) as it was accompanied by a verbal threat. In *Roberts*, the 10th Circuit held that such a sentence enhancement was permissible under the robbery guidelines as well where the defendant held a knife on the victim while demanding money.

In the instant case, Townley had a history of verbal and physical abuse toward the victim, he had shown up with a friend with guns to her apartment and had tried to break in to her apartment. On January 20, 1991, Townley and his codefendant arrived in DeQuincy and Townley sent Amos to the door of the victim's trailer while he hid underneath with a gun in an attempt to kidnap her. The next day, January 21, 1991, as the victim arrived at work, Townley arrived and forced the victim into his car. Townley was armed with a 4-½ inch hunting knife, which was subsequently recovered at the scene of the kidnapping. Although he advised her that he had dropped his knife in the struggle with her, she saw Townley's .410 shotgun on the floorboard of the car and was extremely afraid and almost hysterical. Codefendant Amos emphatically and in detail provided information that Townley had threatened him with a knife in the early morning hours of January 21, while Townley insisted that Amos assist him in the kidnapping. Amos was afraid of being hurt himself.

Both Amos and Townley were armed when they reached Woodville, Texas and they took turns standing as armed sentries. Later, Townley advised the victim that if she did what he wanted, that she would not be hurt. That is when the victim consented to sex with Townley, as she feared for her life. Townley's conscious and deliberate display of the knife and the guns instilled fear in his victim, and facilitated the commission of the crime. Townley also increased the risk that his actions would provoke a violent response by the victim, his codefendant, and/or the police. See *United States v. Taylor*, 960 F.2d 115; 92 Daily Journal DAR 4224 (9th Cir.1992). *United States v. Smith*, 905 F.2d 1296 (9th Cir. 1990). In fact, Townley and Amos had actually rehearsed how they would respond to law enforcement officers if they arrived at the house in Woodville, and, upon one occasion, upon hearing a noise, the defendants responded with firearms in their hands. Townley had also boasted that he would "take the FBI men out" before they got him. Therefore, the application of the two-point enhancement is justified.

■ The defense then objected to the denial of a two-point reduction for acceptance of responsibility. The defense argues that the defendant showed acceptance of responsibility through his guilty plea and is not required to express remorse to the victim, or promise not to commit criminal acts in the future. Probation's position is that the defendant is to clearly demonstrate a recognition and affirmative acceptance of responsibility for his criminal conduct under § 3E1.1(a).

§ 3E1.1, the Application notes, states that in determining whether a defendant qualifies for this provision, appropriate considerations include, but are not limited to, the following:

(a) voluntary termination or withdrawal from criminal conduct or associations;

(c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;

(d) voluntary surrender to authorities promptly after commission of the offense;

(g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

(3) Entry of a plea of guilty prior to the commencement of trial combined with truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility for the purposes of this section. However, this evidence may be outweighed by the conduct of the defendant that is inconsistent with such acceptance of responsibility.

The sentencing judge is the proper party to determine whether or not the defendant has accepted responsibility and this deci-

sion will be given great deference on review. § 3E1.1, Application note 5.

In this case, Probation did not recommend the two-point reduction because the defendant took more than one year to plead guilty, paid no restitution and showed no remorse toward the victim. The defense argues that, under a strict reading of the guidelines, these actions are not required of the defendant and that the defendant was merely exercising his right to a trial during the year prior to his plea. In reviewing the facts before the court, we have uncovered no overt actions indicative of acceptance of responsibility. Townley did act in accepting a plea, but that action may not have stemmed from a genuine desire to accept personal responsibility for his conduct, but as a part of a favorable agreement. See *U.S. v. Roberson*, 872 F.2d 597 (5th Cir.1989). We must note that Townley did not offer to cooperate with the authorities and to testify at his co-conspirator's trial. See *U.S. v. Edwards*, 911 F.2d 1031 (5th Cir.1990); he did not voluntarily surrender or release the victim; he did not make voluntary and truthful admissions to the authorities of his involvement in the offense or related conduct; and he took over a year to enter a plea. Evidence was produced that as late as June, 1991, Townley was still calling the victim from jail. At that time he told her that he did not blame her for "what she had done." Under these facts, the court does not believe this two point reduction is warranted.

The defense then objected to the reference to the charge of aggravated arson in paragraph 41, as another person pled to that charge. According to the Beauregard Parish District Attorney's Office, another person did admit to this charge and it was dropped. This, however, does not reduce the two criminal history points assigned under paragraph 41 as they refer to the actual felony with which Townley was convicted.

■ In summation, the defense argued that Townley could have killed the victim, but he did not. The defense argued that he could have physically hurt the victim, but he did not and that this was a serious case

of "fatal attraction." The defense asserts that it is not the term of incarceration, but the fact of incarceration that will rehabilitate a man, if he is going to rehabilitate. Because, in defense counsel's opinion, Townley needs psychological help, may be suicidal, and kidnapped, not for financial gain, but for the "love" of a woman, that this court should not depart upward.

The Fifth Circuit has held that sentences that fall within the statutory limits, even though constituting an upward departure from the guidelines, will not be disturbed absent a "gross abuse of discretion." *United States v. Juarez–Ortega*, 866 F.2d 747, 748 (5th Cir.1989). The statutory maximum for 18 U.S.C. § 1201(c) is imprisonment for life.

■ When departing from the guidelines, however, the district court must articulate the reasons justifying the upward departure. *United States v. Murillo*, 902 F.2d 1169, 1172 (5th Cir.1990). If the reasons are "acceptable" and "reasonable" the Fifth Circuit will affirm. *United States v. Perez*, 915 F.2d 947, 948 (5th Cir.1990); *United States v. Mejia–Orosco*, 867 F.2d 216, 221 (5th Cir.), *cert. den.*, 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989).

The majority of jurisprudence in this circuit does not require that the district court give reasons for the extent of its departure. *United States v. Roberson*, 872 F.2d 597, 601 (5th Cir.), *cert. den.*, 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989). In *U.S. v. Lambert*, 963 F.2d 711 (5th Cir. 1992), the Fifth Circuit seemingly mandated that this court consider sentences corresponding to the defendant's criminal history categories and this court has done that. Townley's criminal history category is IV with an offense level of 29. Taking the position that Townley's criminal history is not adequately reflected in the guidelines and considering Criminal History categories of V and VI, the maximum time with an offense level of 29 would be 188 months. The court does not, given the entirety of the evidence before it, believe that 188 months is adequate.

An upward departure in this case is warranted based on the fact that the offense

level does not adequately reflect the risk this offense represented in the community in the following respects:

1) The conduct exhibited by the defendant prior to the actual kidnapping was extreme and was very similar to that of a stalker. The defendant repeatedly called the victim at her place of employment, even after being told not to, and continuously threatened the victim and her relationship with her child. He gave the victim no rest. The defendant purposefully contacted the victim's ex-husband and gave him false information which made him file for a change in custody. The defendant later recanted his testimony, but this did not alleviate the emotional trauma inflicted upon his victim and the child's father. The defendant threatened the victim, telling her that the next time she saw him, he would kidnap her and just left her there to wait and wonder when and if he would get her;

2) The psychological and emotional injury sustained by the victim necessitating continued psychological counseling;

3) The fact that the defendant was armed with a knife and a gun in the commission of this crime, using them to threaten the victim and his co-defendant;

4) The extreme conduct by the defendant in his treatment of the victim in a degrading and cruel manner, including denying her the use of proper facilities and forcing her to relieve herself in the woods while he watched, and forcing her to have sex with him. (Even though the victim participated in the sexual act with the defendant, in view of the fact that she had been kidnapped, threatened, terrorized, and feared for her very life, this court cannot say that she freely consented). Even prior to the kidnapping, the defendant actually grabbed the victim's two and one-half year old child and threatened to take him from her (and probably would have had the neighbors not been gathered at her door). He made allegations under oath that she sexually abused her son and that she did drugs in an attempt to threaten her again with the loss of her child. Although he later recanted his testimony, this shows the extremes that this man will pursue to torture his victim.

5) Furthermore, reasonable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal background or his propensity for future criminal conduct. The defendant has an extensive criminal history and this court has no indication that the defendant is no longer obsessed with this victim.

This court finds that the spectrum of risk to the life of the victim was not adequately considered by the guidelines; nowhere does the guidelines address the "stalking" mentality considered in this case. Therefore, for the reasons set forth above, the nature and circumstances of the crime, criminal history and characteristics, need to reflect the seriousness of the offense, need to provide respect for the law, need to provide just punishment, as well as the need to afford an adequate deterrence to similar behavior and to protect the public from further criminal conduct by this defendant not only suggests an upward departure from the guidelines, but mandates such a departure.